The State v. George Aurentz, Appellant.

Division Two, June 25, 1926.

1. **ARGUMENT TO JURY: Lawless Character of Defendant.** Defendant having admitted his conviction in the Federal court for selling liquor and a sentence of six months in jail, and his counsel in his argument to the jury having referred to defendant's activity and good character as a law-abiding citizen, without any evidence justifying such claims, it was not error for counsel for the State to say in reply: "What has he been doing? Has he been the angel that counsel would have you believe? Oh, no, the evidence wholly fails to show where he has hit a tap except to violate the Constitution of the United States and has been convicted in the Federal court."

2. **EVIDENCE: Rebuttal: Negative in Character.** Testimony for defendant that a short time before defendant shot deceased, deceased and his wife were standing on the floor of a dance pavilion and deceased struck her on her face and knocked her down, and that she appealed to defendant, who was her brother, for protection, having been admitted, testimony by two other persons that they were sitting on the porch of their near-by residence, that they were looking at the dancers and could see all parts of the pavilion, that it was lighted by electricity, and that they did not see or know anything about a woman being knocked down, was properly admitted in rebuttal.

3. **WITNESS: Indorsement of Name: After Close of State's Case.** A request made by the prosecuting attorney, after the close of the State's case, but before defendant offered any testimony, for leave to indorse on the information the name of a witness, is authorized by the statute (Sec. 3889, R. S. 1919), upon a showing by the prosecuting attorney that he first learned that the testimony of the witness was material after the close of the State's case, and upon a proffered opportunity by the court to defendant's counsel to interview the witness before testifying.

4. **COUNSEL: Improper Questions: Ruling: Reprimand: No Exception.** The ruling of the court that a sufficient reprimand had been administered to counsel for the State for asking improper questions on the cross-examination of a witness, is not for review on appeal where no exception was saved to the ruling.

5. **INSTRUCTION: Covering Case: Omission of Reasonable Doubt, Presumption of Innocence, Self-Defense, Etc.** Instructions must be read together and considered as a whole. It is no valid objection to an instruction covering the whole case and embodying every element of murder in the second degree, and directing them to convict defendant, "unless you further find from the evidence that defendant acted in self-defense as defined in another instruction," that it omits to charge the jury on reasonable doubt, presumption of innocence and apprehended danger, where the court by other instructions fully and accurately instructs upon all those subjects.

6. ———: **Apprehension: Self-Defense: Belief.** It is not enough that defendant believed that deceased was about to take his life; to be excused on the ground of self-defense or apprehended danger, he must have had reasonable cause to believe that deceased intended to kill him, or to do him some great personal injury, and reasonable cause to apprehend immediate danger of such design being accomplished. An instruction is not erroneous, which concludes with the words: "On the other hand it is not enough that defendant believed that the danger was real and actually impending; he

must have had reasonable cause so to believe. Whether or not he had reasonable cause is for you to determine under all the facts and circumstances given in evidence. If you should believe from the evidence that the defendant did not have reasonable cause to so believe, you cannot acquit him on the ground of self-defense, although you may believe he really thought he was in danger."

7. ———: **Credibility: Collateral Matter: Motion for New Trial.** Failure to instruct on a collateral matter (not an essential element of the offense embraced in the charge) is not error, unless such an instruction is requested. A request in defendant's trial for murder that the court instruct upon "the credibility of the witnesses and the weight to be given to their testimony" is not a request that the court instruct that evidence of defendant's conviction of the violation of the prohibition laws was admitted solely for the purpose of affecting his credibility as a witness; nor is a failure to instruct on the subject for consideration on appeal if not called to the attention of the trial court in the motion for a new trial.

8. ———: **Manslaughter: Hot Temper: Apprehended Danger.** If the slayer was master of his own temper, the killing with a lethal weapon is not manslaughter. Where defendant's own evidence tends to show that he shot deceased solely because he apprehended that deceased was about to draw a pistol from his pocket, he was not entitled to an instruction on manslaughter.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 1091, p. 562, n. 12, 14; Section 2027, p. 796, n. 51, 55; Section 2261, p. 911, n. 74; Section 2493, p. 1049, n. 82; Section 2495, p. 1053, n. 93; Section 2498, p. 1056, n. 20; Section 2500, p. 1058, n. 37; Section 2506, p. 1063, n. 85; 17 C. J., Section 3332, p. 62, n. 94; Section 3344, p. 79, n. 73; Section 3351, p. 89, n. 70; Section 3561, p. 217, n. 61. **Homicide**, 30 C. J., Section 621 p. 371, n. 34; Section 623, p. 378, n. 72; Section 659, p. 414, n. 79.

Appeal from Greene Circuit Court.—Hon. Charles L. Henson, Special Judge.

AFFIRMED.

*L. L. Collins* and *Allen & Allen* for appellant.

(1) The remarks of Mr. Hamlin, special prosecutor, calling the defendant a "red-handed murderer," saying "that the defendant never contributed a cent to the cause of God Almighty" and "there is no evidence that he ever contributed a penny to the cause of morality or upbuilding of society in Greene County or anywhere else," and the further words, "the evidence wholly fails to show where he has hit a tap, except to violate the Constitution of the United States, and has been convicted in Federal Court," to all of which the defendant objected, and appellant contends that the wrong it accomplished was not cured by the words, suggestions or admonitions of the court. State v. Ferguson, 152 Mo. 92; State v. Reppley, 278 Mo. 342. A prosecutor is out of order when he expresses a belief in the guilt of the defendant, and such assertion on his part requires a rebuke by the court. State v. Hess, 240 Mo. 159; State v. Webb, 254 Mo. 435; State v. Baker, 246 Mo. 376. (2) The instruction upon murder in the second degree purporting to contain all the is-

sues was erroneous, in that it excluded the theory of reasonable doubt, sufficient cause, reason or provocation, and also excluded the theory of self-defense, except by reference to Instruction 2, condemned by this court in the former trial. The instruction omitted the question of reasonable doubt, and omitted the theory of self-defense, except to refer to the instruction on self-defense condemned by this court. State v. Helton, 234 Mo. 559; State v. Stubblefield, 239 Mo. 526; State v. Gabriel, 256 S. W. 767. (3) Instruction 2, on the subject of self-defense, was complained of at the previous hearing in this court, for the reason that it was argumentative, gave undue prominence and emphasis to the negative of the question of reasonable cause of the defendant to believe himself in danger, on account and by reason of the conclusion of said instruction. (4) The lower court must comply with the directions contained in the opinion of this court, and the Supreme Court's ruling on a first appeal is the law of the case, and the trial court must be controlled thereby. State v. Liolios, 252 S. W. 621; Railroad v. Bridge Co., 215 Mo. 286; Gracey v. St. Louis, 221 Mo. 1; Meriwether v. Publishers, 224 Mo. 617; Murphy v. Barron, 286 Mo. 390; Marston v. Catterlin, 290 Mo. 185.

*North T. Gentry*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1) It was not error to permit the State to indorse the name of witness Welch on the information and allow him to testify, under the showing made by the State. Sec. 3889, R. S. 1919; State v. Jeffries, 210 Mo. 324; State v. Lassieur, 242 S. W. 902. (a) The scope of rebuttal testimony is largely within the discretion of the trial judge. The admission of the testimony of Crow was not error. No objection was made at the time to the admission of the testimony of Mrs. Crow, hence not reviewable. State v. Murphy, 292 Mo. 291. (b) The question "You heard the jury had given him twenty-five years in the pen," asked witness Tiller and complained of, was on cross-examination. Appellant's objection was sustained and counsel admonished to desist in asking such questions and the jury was instructed to disregard same. No exception was saved to the court's action in admonishing counsel and directing the jury not to consider same. (2) Remarks of counsel must be prejudicial to appellant in order to justify a reversal. Objections to the remarks of Mr. Hamlin, complained of in appellant's motion for a new trial, were either sustained without exception to the court's action as to a sufficient reprimand, or were within ligitimate argument or proper inferences from the evidence and in answer to arguments of counsel for appellant, and hence not reversible error. State v. Harvey, 214 Mo. 411; State v. Johnson, 252 S. W. 624-5. (3) Instruction 1 is correct. State v.

Hembree, 242 S. W. 914; State v. Emory, 246 S. W. 951-2.   (4)   Instruction 2 properly declares the law of self-defense.   State v. Gee, 85 Mo. 652; State v. Parker, 106 Mo. 224-5; State v. Parmenter, 278 Mo. 540.   (5)   The failure to give an instruction on manslaughter was not error since there is no evidence in the case warranting it. State v. Aurentz, 263 S. W. 182.   (6)   There is no evidence in the record warranting an instruction that appellant had a right to shoot deceased to protect his sister.   His sole defense was that of self-defense.   (7)   Reading the given instructions together as a whole, as must be done, they clearly and correctly state the law of this case.

HIGBEE, C.—The information, filed November 17, 1922, charges defendant with murder in the first degree.   On a trial he was found guilty of murder in the second degree and sentenced to imprisonment in the penitentiary for a term of twenty-five years.   The conviction was reversed and the cause remanded.   [State v. Aurentz, 263 S. W. 178.]   On the second trial the defendant was again found guilty of murder in the second degree and sentenced to imprisonment in the penitentiary for a term of twenty years, from which he appealed.   The statement by the Attorney-General fairly outlines the facts, as follows:

The evidence on behalf of the State tended to prove the following:

On the night of August 14, 1922, in Greene County, Missouri, there was a dance in the dancing pavilion at Percy's Cave, eight miles from Springfield, owned and operated by J. W. Crow, who lived about one hundred and fifty feet from said pavilion, which was lighted by electricity.

The deceased, Ernest Cameron, and his wife, Eva, a sister of appellant, after supper that evening in Springfield, drove with some friends in a car to Percy's Cave to attend the dance.   Appellant in his car, accompanied by some friends, also left Springfield about the same time for the same place for the same purpose, and all friendly and apparently in good spirits.   Appellant arrived first, and when deceased and party arrived and got out of their car appellant offered them a drink.   Deceased declined, but his wife accepted.   The cars, with others, were parked near the public highway about thirty feet from the pavilion.   These parties then went down to the pavilion where the dancing was then in progress.   It appears that soon afterwards some difficulty arose on the dance floor between deceased and his wife.   Appellant remarked that, "If these kids don't quit their argument, I am going to kill him" (Cameron).

Presently deceased left the dance floor and went up to where the cars were parked, and later came back and in a few minutes returned to the cars, taking his wife with him.   As they proceeded towards the cars it appears that Mrs. Cameron picked up a rock or some

gravel and threw it at her husband as he ran along ahead of her, remarking as she did so, "You cowardly s—— o—— b——, run."

Appellant followed them up to the cars in a minute or two, and when he arrived deceased was standing almost in front of and near a car, smoking a cigarette. Appellant stopped four or five feet in front of deceased and as he stood looking toward deceased, the latter facing appellant, appellant said, "You d—— little s—— of b—— I'm going to shoot you," and drew a pistol and began firing. Cameron turned like he was starting to walk away and fell and died shortly thereafter. Deceased had said nothing to appellant preceding the shooting. Three shots were fired in rapid succession, one making a flesh wound in the shoulder, and another striking the vertebra and severing the spinal cord, which produced death. When the body of deceased was searched soon after, a pocket knife, a watch and some empty cigarette packages were found on him, but no weapon.

After the shooting appellant said, "If there is anybody here. that wants to take it up, let him step out." No one stepped out, and appellant walked away into the brush with his gun in his hand. Appellant had checked his pistol with young Crow at the refreshment stand in one corner of the pavilion shortly after arriving, but called for it just prior to the shooting.

The testimony on the part of defendant tended to prove the following:

It was shown that deceased, at different times prior to the homicide, had difficulty with appellant and had threatened to kill him.

Appellant, a single man, lived with his mother in Springfield and on the night of this tragedy took supper at the Yancey home, a neighbor, and afterward, about 8:30, he, together with four others, started in his car to Percy's Cave, arriving there about thirty minutes later. After parking his car they went to the dancing pavilion and danced until about 10:45, when Mr. Crow, the owner and proprietor, stopped the music and dancing. Previous to this time appellant saw deceased, who was his brother-in-law, strike his wife while they were on the platform. The latter appealed to appellant for protection, but appellant told her he didn't want to get mixed up in their affairs, and did nothing.

Deceased and his wife then left the dancing floor and started up toward the cars, and later came back, and then again returned toward the cars. This time deceased was jerking his wife along up the hill and beating her. Appellant and a young woman then went on up the hill in the same direction, and appellant's attention was attracted by deceased fighting his wife, and the latter said to appellant, "George, make him quit this." Appellant said, "Ernest. don't hit her any more." Deceased replied. "You are the s—— o—— b—— I want," and made a move with his hand toward his hip pocket and

partially turned sideways when appellant drew his gun from his front trouser pocket and began shooting and fired three shots as quickly as he could. One John Yancey then came up and said, "My God, who done this?" Appellant replied, "I did, John, but I had to do it." Yancey said, "It makes no difference, I will put you in the penitentiary if it costs twenty thousand dollars," or words to that effect. Appellant said, "Don't come out with anything, John," and Yancey threw up his hands and said, "I haven't got anything."

Appellant then walked off across the road and stopped behind some cars out of sight of the crowd, but could still see the body. Yancey began straightening out the body of deceased and pulled the right arm from under the body and came up with a gun and said, "Everybody stand back, I will kill the first man that touches this body."

Appellant testified that when deceased reached for his hip pocket and declared, "You are the s—— o—— b—— I am after," he knew he had to kill Cameron or get killed, and shot to save himself. Appellant knew or thought deceased had a gun and knew Yancey always carried a gun, and thought deceased had gone to Yancey for it from remarks made.

Appellant denied saying, "If these kids don't stop quarreling, I will kill him," and denied that he said, "I am going to kill that s—— o—— b——."

Appellant admitted his conviction in the Federal Court at the April term, 1923, in Springfield, for selling liquor, and receiving sentence of six months in jail.

The first instruction given for the State reads in part:

"Bearing in mind the definitions heretofore given of the terms wilfully, feloniously, premeditatedly, and with malice aforethought, if you find and believe from the evidence that in the County of Greene and State of Missouri, on or about August 14, 1922, or at any time before the filing of the information herein, the defendant wilfully, feloniously, premeditatedly and with malice aforethought, but not deliberately shot Ernest Cameron with an automatic pistol and further find from the evidence that within a year and a day from such shooting, to-wit, on or about August 14, 1922, the said Ernest Cameron died from the effects of such shooting and wounding done by the defendant as aforesaid, you will find the defendant guilty of murder in the second degree unless you further find from the evidence that defendant acted in self-defense as defined in another instruction.

"If you find the defendant guilty of murder in the second degree, you will assess his punishment at imprisonment in the penitentiary for such a length of time as you deem proper; not less than ten years."

Instruction 2 reads: "Upon the law of self-defense the jury are instructed that if the defendant, at the time he shot the deceased,

had reasonable cause to apprehend and did apprehend, that the deceased was about, either to kill him or to do him some great bodily harm, and that the danger of his doing either was imminent, and that. the defendant shot to avert such apprehended danger, then such shooting was justifiable, and you should acquit on the ground of self-defense. And in this connection the jury are instructed that it is not necessary, in order to acquit on the ground of self-defense, that the danger should, as a matter of fact have been real or actually impending; all that is necessary is that the defendant had reasonable cause to believe and did believe that the danger was real and about to fall upon him; and if the defendant acted in a moment of apparently impending danger from an assault by the deceased, it was not necessary for him to nicely measure the proper quantity of force necessary to repel the assault. And the question for you to determine is, not what you think it was necessary for the defendant to have done or not done, at the time he shot the deceased, but the question is what the defendant might have reasonably believed was necessary for him to do under all the circumstances as it appeared to him at the time. *On the other hand it is not enough that defendant believed that the danger was real or actually impending. He must have had reasonable cause so to believe: whether or not he had reasonable cause is for you to determine under all the facts and circumstances given in evidence. If you should believe from the evidence that the defendant did not have reasonable cause to so believe, you cannot acquit him on the ground of self-defense, although you may believe that the defendant really thought he was in danger. You are further instructed that the sole defense in this case is that of self-defense.*"

Instruction 3 is the usual instruction on threats. Number 5 is the usual instruction on reasonable doubt, the presumption of innocence and the burden of proof, and that the jury are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. Learned counsel for appellant, in their brief, assign several errors which we will consider in their order.

I. That Mr. Hamlin, in his closing argument for the prosecution, said: "What has he [defendant] been doing? Has he been the angel that Mr. Collins would have you believe he is? Oh no, the evidence wholly fails to show where he has hit a tap except to violate the Constitution of the United States and has been convicted in the Federal Court." The bill of exceptions continues: "This was in reply to Attorney Collin's argument wherein he referred to the defendant's activity and good character as a law-abiding citizen, to which language the de-

**Argument to Jury.**

fendant duly objected at the time. Objection overruled, to which defendant excepted."

There is no evidence in the record justifying the argument of defendant's counsel which elicited the language complained of. There is no merit in this complaint.

"Mr. Hamlin also used the. following language in his closing argument: 'It's only been a short while since George McDaniel stood by the people of this county and saved them thousands of dollars.' To such language defendant duly objected at the time for the reason it is not evidence. By the COURT: The objection will be overruled: he is commenting on the evidence. To which ruling the defendant excepted." Appellant has not indicated wherein the court erred in this ruling. We must assume it was a proper comment on the evidence.

Objections to other remarks by counsel in his closing arguments were sustained. The court was not asked to reprimand counsel. The court having sustained the objections and no further relief having been asked, the remarks complained of cannot be considered on appeal.

II.  The second assignment is that the testimony of J. W. Crow and his wife was not in rebuttal "and their evidence is immaterial, yet prejudicial, being of a negative character and likely to be mistaken for affirmative statements."

**Rebuttal.**

Complaint is also made under this assignment that George F. Welch was permitted to testify "though his name was not indorsed on the information."

The defendant introduced evidence that the deceased, Ernest Cameron, and his wife, were on the floor of the pavilion and that a short time before the defendant shot and killed Cameron, he, Cameron, struck his wife on her face with his fist and knocked her down, and that Mrs. Cameron appealed to the defendant, who was her brother, for protection. Crow, the proprietor of the pavilion, and his wife, were sitting on the porch of their residence. They testified the pavilion was lighted by electricity; that they were looking at the dancers at the time mentioned and could see all parts of the pavilion and that they did not see or know anything about a woman being knocked down. Their evidence was properly admitted in rebuttal.

After the State closed its case but before the defendant offered any testimony, the prosecuting attorney asked leave to indorse on the information the name of George F. Welch, who was an eye-witness to the tragedy, as a witness for the State. Upon a showing made by the prosecuting attorney that he had first learned, after the State closed its case, that the testimony of this witness was material, the court permitted the name of

**Inaorsement of Witness.**

the witness to be indorsed and announced that counsel for the defendant should have an opportunity to interview the witness before he should be permitted to testify. This offer was declined by counsel. The indorsement was authorized by Section 3889, Revised Statutes 1919. [State v. Barrington, 198 Mo. 23, 70, 95 S. W. 235; State v. Jeffries, 210 Mo. 302, 324, 109 S. W. 614; State v. Lassieur, 242 S. W. 901; State v. Dixon, 253 S. W. 746.]

III. William Tiller, a witness for the defendant, who lived at Carthage, Missouri, testified that in a conversation with John Yancey, a witness for the State, about the homicide at Percy's Cave on the night of August 14, 1922, Yancey had offered witness money if he would swear he was at the cave on that occasion. On cross-examination Tiller said he was at Springfield during the first trial of this case; that he guessed he was "up there gambling;" that he knew that George Aurentz, with whom he was on friendly terms, was on trial for his life, and that he had not reported his talk with Yancey to any one. "Q. You heard the jury had given him twenty-five years in the penitentiary?" Defendant's counsel objecting to this question, the court said: "The objection will be sustained and the attorneys must desist from asking such questions." Counsel for defendant asked the court to reprimand counsel and discharge the jury and declare it a mistrial. By the court: "I think I gave a sufficient reprimand; the request to discharge the jury will be refused. Gentlemen of the jury, the question regarding the verdict at the last trial was wholly improper and you are instructed to entirely disregard it; to disgorge your minds thoroughly of any consideration of that question." No exception was saved to the ruling of the court; hence it is not before us for review.

*Reprimand.*

IV. Appellant criticizes Instruction 1, on murder in the second degree. It purports, so learned counsel say, to cover all the issues in the case; it omits to charge the jury on reasonable doubt; omits the question of "sufficient cause, reason or provocation and while it does refer to self-defense as defined in another instruction, that instruction in the former trial was declared erroneous."

The objection that the instruction does not refer to reasonable doubt is without merit. The court fully instructed the jury upon the questions of the presumption of innocence, reasonable doubt and the burden of proof in the fifth instruction for the State. There is and can be no complaint as to the sufficiency of Instruction 5.

It is the rule that instructions must be read and considered as a whole. In State v. Douglas, 278 S. W. 1026, White, J., said:

"Furthermore, the court, by Instruction No. 12, carefully and fully instructed the jury regarding the defense of insanity, and it is not

complained that it did not embody every element favorable to the defendant that he could properly ask. In some of the cases it is said that a particular instruction on self-defense does not correct the omission in the main instruction. I do not believe that distinction is based on any sound reason. The instruction here on insanity, had it been incorporated as a part of Instruction No. 5 complained of, would entirely have met appellant's objection. What difference is there in the effect of the instructions that the two parts are separated by numerals? This court has repeatedly held that instructions must be read and considered as a whole. It is for convenience in considering them that they are separately numbered, not that they should have any different effect. So it has been held in civil cases that, where an instruction authorizes a verdict for the plaintiff, and omits mention of a defense, such instruction is erroneous, but the error is cured where another instruction embodies such defenses. [McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 1. c. 260, 227 S. W. 1047; State ex rel. Jenkins v. Trimble, 291 Mo. 234, 236 S. W. 651; State ex rel. Ambrose v. Trimble, 304 Mo. 1. c. 537, 263 S. W. 840. There is no good reason why that rule should not apply to criminal cases as well as to civil cases. The defendant is not harmed in such cases because his entire defense is properly put before the jury just as forcibly and clearly as possible. Under the instructions given, the jury could not have found the defendant guilty without finding him sane.''

The instruction does not omit the issue of self-defense, but expressly refers to another instruction on that issue.

Again it is assigned as error under this point that the court erred in not omitting the portion (which we have italicized) of the second instruction as heretofore set out.

This instruction properly declares the law of self-defense. "Homicide shall be deemed justifiable when committed by any person in either of the following cases: . . . or, second, when committed in the lawful defense of such person, or of his or her husband or wife, parent, child, brother, sister, . . . when there shall be reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be reasonable cause to apprehend immediate danger of such design being accomplished.'' [Sec. 3233, R. S. 1919.]

Under the statute it is not enough that the defendant believed that the deceased, Cameron, was about to take his life. The question is, did he have reasonable cause to believe that Cameron intended to kill him, or to do him some great personal injury and to apprehend immediate danger of such design being accomplished. The portion of the instruction criticized informed the jury that it was not enough that defendant *believed* that the danger was real or ac-

tually impending; he must have had *reasonable cause* so to believe; whether or not he had such reasonable cause "is for you to determine under all the facts and circumstances given in evidence."

While this instruction is, perhaps, longer than necessary, and, may be, somewhat repetitious, yet we think it clearly enunciated the law applicable to justifiable homicide, in accordance with the spirit and letter of the statute. The instruction did not require the jury to find that Cameron, as a matter of fact, was about to take the defendant's life before he could invoke the right of self-defense, but that the defendant had reasonable cause to apprehend such design and to apprehend immediate danger of such design being accomplished. As said by Judge WALKER in State v. Parmenter, 278 Mo. 532, 541, 213 S. W. 439: "This instruction read as a whole shows clearly that it was not the real, but the apprehended danger, which would justify defensive action."

Substantially this form of instruction was approved also in State v. Gee, 85 Mo. 647, 650 (13), and State v. Parker, 106 Mo. 217, 224, 17 S. W. 180. Instruction A, asked by the defendant on the subject of self-defense, was fully covered by Instruction 2, and was properly refused.

V. Error is assigned in that the court failed to instruct the jury "upon the question of the credibility of the defendant, especially upon the subject of his conviction of a violation of the Federal prohibition law, and should have told the jury that evidence of that conviction was admitted solely for the purpose of affecting defendant's credibility as a witness."

The written request for instructions reads: "4. The credibility of the witnesses and the weight to be given to their testimony." The court gave instructions upon all the subjects requested. An instruction that the conviction of a violation of the Federal prohibition law went only to the credibility of the defendant's evidence was not requested. Failure to instruct on a collateral matter, not an essential element of the offense embraced within the charge, is not error unless such an instruction is requested. [State v. English, 308 Mo. 695, 707, 274 S. W. 470 (11).] The failure to instruct on this subject was not called to the attention of the court in the motion for new trial, hence the alleged error is not reviewable on appeal. [State v. Knight, 278 S. W. 1036 (8).]

VI. It is alleged that the court erred in failing to instruct the jury on the law of manslaughter. The defendant testified that Cameron struck his wife, the defendant's sister, while she was "on the dance platform and she appealed to me and I just told her I didn't want to mix up in any of her affairs, or words and substance to that.

I didn't want to have any trouble. They were near the entrance on the north side of the dance hall when he struck her; I was just a few feet from them. After striking her he went up the hill where the cars were parked. He hit her and she came right over to me and appealed to me. Crow came in and ordered the dancing stopped and they stopped right away. Cameron came back down the hill nearly to the entrance; he was jerking her (his wife) and taking her up the hill from the pavilion with Della Armstrong. When I got to the hill or gate, Cameron was fighting or jerking and beating my sister. She said, 'George, make him quit this.' I says, 'Ernest, don't hit her any more.' He says, 'You are the s—— o—— b—— I want,' and went to his hip pocket, kind of turned sideways and went to his hip pocket, and I had a gun in my front pants pocket and drew it and commenced shooting. I shot three shots as quick as I could. Immediately after the shooting Mr. Yancey came around to the front end of my car; I was in front of my car, and says, 'My God, who done this?' I says, 'I did, John, but I had to do it.' He says, 'It makes no difference, I will put you in the penitentiary if it costs twenty thousand dollars,' or words to that effect.'' Witness further stated that Yancey had nothing in his hand at that time; that Yancey stooped down over Cameron's body, straightening the body, and came up with a gun and said, '' 'Everybody stand back. I will kill the first man that touches this body.' I stepped over the fence and went up the hill and sat down. I didn't want any trouble with him; had all the trouble I wanted. When Cameron reached for his hip pocket and says you are the s—— o—— b—— I am after, I knew I either had to kill him or he was going to kill me. I could tell from his actions. I shot to save myself. I knew it was him or me, one.''

The defendant's testimony wholly fails to show that he was provoked into a sudden passion by Cameron's assaulting and beating Mrs. Cameron, and that he shot and killed Cameron in consequence of such passion. ''But whatever cause of provocation may have existed, if the homicide was not the result of passion—if the slayer was master of his temper at the time, the killing with a lethal weapon is murder, not manslaughter.'' [Kelley's Crim. Law (3 Ed.) sec. 505 (note 177), citing State v. Green, 37 Mo. 466; State v. McKenzie, 228 Mo. 385, 402, 128 S. W. 948, and other cases. See also State v. Connor, 252 S. W. 713, 718 (8).] On the contrary, the defendant's evidence tends to show that he shot the deceased solely because he apprehended that Cameron was about to draw a gun from his pocket. ''I knew I either had to kill him or he was going to kill me.'' ''I shot to save myself. I knew it was him or me, one.'' The evidence did not warrant an instruction on manslaughter. On the former appeal, Judge RAILEY said: ''On the facts disclosed by the

record, we are of the opinion that the defendant was not entitled to instructions relating to manslaughter.''

We have considered all the assignments of error in appellant's brief and in the motion for new trial. The indictment clearly and distinctly charges the defendant with the crime of murder in the first degree. The verdict is in proper form and is supported by ample evidence. Finding no prejudicial error in the record, the judgment is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is hereby adopted as the opinion of the court. All of the judges concur.