**STATE of Missouri, Respondent,**

v.

**Robert W. McQUERRY, Appellant.**

**No. 52081.**

Supreme Court of Missouri,
Division No. 2.

Oct. 10, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Glen C. Schomburg, Sp. Asst. Atty. Gen., Kirkwood, for respondent.

No attorney for appellant.

STOCKARD, Commissioner.

Robert W. McQuerry has appealed from a judgment wherein he was sentenced to confinement for a term of four years for manslaughter.

At the trial appellant was represented by counsel of his own selection who filed a motion for new trial after the jury verdict and a timely notice of appeal following judgment. The transcript on appeal filed in this court was not prepared at public expense. It appears that appellant is not in confinement pending this appeal, and presumably he is free on bond.

On July 13, 1966, the attorney who represented appellant in the trial court filed a motion in this court to be permitted to withdraw as counsel on appeal. He alleged therein that appellant "owns a farm and livestock and is financially able to pay for this appeal," but that although requested to do so he has refused and still refuses to pay a reasonable attorney fee and advance the cost of printing a brief. A copy of the motion was sent to appellant. On July 21, 1966 this court granted counsel permission to withdraw, and a copy of that order was sent to appellant with a copy of the docket for the September term in which the appeal in this case was shown to be set for September 15, 1966. No communication of any kind has been received by this court from appellant or from anyone in his behalf pertaining to counsel's request for permission to withdraw or pertaining to the setting of this case. At the trial appellant testified that he owned a 253 acre farm. We conclude from the record and from the file that appellant is not an indigent, and that he has voluntarily submitted this appeal to this court without counsel and without a brief. In these circumstances we review upon the record those matters required by Criminal Rule 28.02, V.A.M.R., and we review the assignments of error in the motion for new trial which present an issue for appellate review.

The first two assignments of error in the motion for new trial are that the trial court erred in refusing appellant's motion for acquittal at the close of the evidence for the State and at the close of all the evidence. Appellant offered evidence in his behalf after the close of the State's case, and for that reason we need consider only whether the motion made at the close of all the evidence should have been sustained. State v. Shelby, Mo., 327 S.W.2d 873, 874.

On the evening of February 12, 1965, appellant and his wife left their home near Winona in Shannon County in a pick-up truck to feed some hogs they kept nearby. They passed the log house home of Willis Robinett, then past 85 years of age, and his wife Clara Robinett who was 54 years of age. The Robinetts kept some milking goats in a barn across the road from their house, and after they had finished milking appellant and his wife came back to the Robinett house. According to appellant he wanted to talk to Mr. Robinett about tying up two dogs so they would not cripple his pigs, but Mrs. Robinett stated that the dogs were pups about three months old, and that appellant had given the pups to them. Mrs. Robinett also testified that she had entered the house and was straining the milk when she heard a loud shot. She ran out of the house and her husband was sitting by the gate, and he screamed "my leg's broken." Mrs. Robinett carried a .22 caliber pistol, and she shot into the air but she did not know how many times. She said that she ran toward appellant's truck, and "he [appellant] run me around there three or four times" and then shot her in the side when she was "heading back to [her] husband." She then heard the first and only shot from her husband's pistol. She had not heard any conversation between appellant and her husband. She carried a .22 caliber pistol and her husband carried a .32 caliber pistol (sometimes referred to as a 7.65 automatic) when they had gone to do the milking because appellant and his wife had threatened them, and said they were "going to run us off our home." Later that evening a highway patrolman found at the

scene four .45 caliber shells and one shell from "a 7.65 automatic" which is "about the same caliber as a .32" and is interchangeable. The next morning the patrolman found a fifth .45 caliber shell "on the ring of the cab [of appellant's truck] just above the windshield." The .22 caliber pistol was a nine-shot revolver type weapon with a cylinder. The following morning it contained four empty shells and five bullets, and the patrolman who examined it did not recall that any of the bullets had been struck by the firing pin without being discharged. However, the sheriff stated that all five of the bullets which had not been discharged had been struck by the firing pin. There was a bullet mark on the door of appellant's pick-up truck apparently made by a .22 caliber bullet. The sheriff testified that the following morning there were no cartridges in the clip of the .45 caliber pistol, but he believed there was one in the barrel. He did not know how many cartridges were in the clip of the .32 caliber pistol but he said there was none in the barrel, and that "one shell had been fired out of it." Mr. Robinett died shortly after the shooting. On his body were found bullet holes in his left leg, in his right hand, "under the right arm, across the wrist," and in his chest.

Appellant and his wife both testified. Appellant stated that he had stopped to talk to Mr. Robinett about his dogs, and that Mr. Robinett had "hooked the gate and started on down to me" when Mrs. Robinett "run from somewhere, in my right rear, a-shooting, and Mr. Robinett then, he run his hand in his pocket and pulled his gun." Appellant tried to start his truck, but Mr. Robinett "had fired two shots," so appellant took his gun which he had on the seat of his truck and shot his "first shot" which he aimed "at his chest." Mr. Robinett "spun around" and sat down. He was "trying to pull the gun off" and "was still pointing, trying to use it, but he never did pull it off." Appellant stated that the shots fired by him other than the first one were aimed at Mr. Robinett's gun which he had

on his knee. As soon as Mr. Robinett dropped his gun, appellant "rolled out on the left-hand side" of his truck, Mrs. Robinett was standing on the right-hand side "snapping a pistol in the window," and appellant ran behind the truck "and shot at her [Mrs. Robinett] when she was standing at the door." Mrs. Robinett then "started around the truck in front" and appellant "reversed" himself to meet her, but she did not go around the truck. Instead, she went over to Mr. Robinett, threw her gun by the side of his, and said, "I quit." The testimony of appellant's wife was substantially the same as that of her husband, except she stated that Mr. Robinett said he was going to kill appellant when he pulled his gun and started shooting.

By the information appellant was charged with murder in the first degree. The jury was instructed on murder in the first degree, murder in the second degree, and manslaughter. Appellant admitted that he intentionally shot Mr. Robinett, and the evidence establishes that the death resulted from the gunshot wounds received from appellant. There was no contention that the shooting was accidental. There unquestionably was a submissible case on second degree murder. See State v. Finn, Mo., 243 S.W.2d 67; and State v. Chamineak, Mo., 343 S.W.2d 153. There may be some question under the circumstances of this case whether appellant was entitled, as a matter of law, to an instruction on manslaughter. State v. Finn, supra. However, that is an issue we need not decide. The trial court did give such an instruction and the jury found him guilty of manslaughter instead of murder in the second degree. "In this situation, when a submissible case is made as to murder, the defendant is not entitled to complain that a submissible case was not made as to a lesser degree of homicide." State v. Chamineak, supra, 343 S.W.2d at p. 157. See also State v. Garrett, Mo., 282 S.W.2d 441; and Criminal Rule 26.06, V.A.M.R. The trial court correctly overruled appellant's motion for acquittal at the close of all the evidence.

■ The third assignment of error is that the trial court erred in permitting Dr. Rollin Smith "to testify relative to the cause of deceased's death for the reason that proper foundation was not laid." In what respects appellant contends there was no "proper foundation" is not set forth, and for that reason the assignment is deficient. However, not adhering strictly to our rules, we have endeavored to determine the basis, if any, for the contention that a "proper foundation" was not laid. Dr. Smith was not a treating doctor, but he was called by the State as an expert witness to express an opinion as to whether the gunshot wounds received by Mr. Robinett caused his death. We assume that appellant's position is that there was no "proper foundation" for the testimony of Dr. Smith as an expert, but if so the contention is without merit. Dr. Smith's qualifications as an expert witness were admitted. A hypothetical question was submitted to him in which he was asked to assume the existence and location of the bullet wounds on the body of Mr. Robinett, the existence and location of which had been otherwise established by competent evidence. He was then asked whether in his opinion any of the wounds would likely produce death. He replied that the wound in the chest "could very easily be the cause of death," and that the wound in the leg could be a "contributing factor" because of "shock and loss of blood." This examination and testimony was proper, and it has long been the rule that a qualified physician may answer hypothetical questions as to the cause of death. State v. Truster, Mo., 334 S.W.2d 104. We find this contention of appellant to be without merit.

■■ The next assignment of error is that the trial court erred in giving Instructions 5 and 6 pertaining to self-defense "because both instructions read together and apart are confusing, ambiguous and do not properly state the law and fail to apprise the jury of the law on the burden of proof." This assignment is insufficient to present any issue for appellate review.

See State v. Cooley, Mo., 221 S.W.2d 480, 484; State v. Breeden, Mo., 180 S.W.2d 684, 687; State v. Richardson, Mo., 321 S.W.2d 423. We note also, that it appears from the transcript that no objection was made to either of these two instructions at the time they were given. However, again not adhering strictly to our rules, we have examined each of the two instructions, and we find them to be in the form and content of instructions previously approved by this court. See State v. Demaree, Mo., 362 S.W.2d 500, as to Instruction 5, and State v. Aurentz, 315 Mo. 242, 286 S.W. 69, as to Instruction 6. The two instructions, pertaining to self-defense, do not mention the burden of proof. However, the trial court gave a separate instruction as to that, and when all the instructions are read together, as they must be, the jury was properly instructed that "the burden of proof rests upon the State to prove beyond a reasonable doubt that the defendant is guilty, and unless [the jury] so found, [it] must acquit him."

■ The next assignment of error is that the trial court erred "in permitting two witnesses to testify in rebuttal about alleged threats made by the defendant at 12:00 noon on the day of the homicide for the reason that the proper foundation was not laid and there was no testimony in chief that any alleged threats were ever communicated to deceased or his wife." As was true in connection with the third assignment, we are not advised in what respect there was not a "proper foundation." However, no "foundation" is required for the State to offer in rebuttal testimony contradictory of statements made by the defendant in his testimony. State v. Martin, Mo., 56 S.W.2d 137, 140. Appellant testified that he and the Robinetts had had no "serious" trouble previously. He admitted that Mr. Robinett had on several occasions reached in his pocket for a gun, but he stated that he "never did take him seriously." On cross-examination he was asked if he told "J. V. Boyd and Gerald Conway [that

he had told Robinett] if he didn't put up the gun, you'd make him eat it," and appellant answered: "No, I told him to put up the gun. I said, 'You'd better put that gun up because there's one laying on you.'" The only rebuttal witnesses were Mr. Boyd and Mr. Conway. Mr. Boyd stated that he was at appellant's house about noon on February 12, 1965, and that he heard appellant say that he had told the Robinetts that "if they didn't put a gun away, he'd make them eat it," or "something like that, kind of a joking way." Mr. Conway testified that he did not hear appellant "tell Mr. Boyd what he had told Mr. Robinett," and that was the extent of his testimony. From the above, it is evident that on cross-examination of appellant a foundation was laid for the contradictory statement of Mr. Boyd, although not required. Also, while we consider it immaterial, there was prior testimony that threats of appellant were communicated to Mr. Robinett. Appellant testified that he had told him that there was a gun "laying on you." We find no merit to this assignment of error.

■ Appellant next asserts that the trial court erred "in not instructing the jury about the alleged threats made by defendant to two of the State's witnesses that testified in rebuttal in the cause on the day of the homicide." This apparently refers to the testimony of Mr. Boyd and Mr. Conway, but Mr. Conway did not testify to any threats by appellant. This assignment does not inform us what instruction appellant thinks the court should have given, and no request whatever was made. Such an instruction would not be one upon a question of law necessary for the guidance of the jury in returning its verdict within the meaning of Criminal Rule 26.02(6), V.A.M.R. It could only be a cautionary instruction on an issue collateral to the principal issue which the trial court need not give in the absence of a request. State v. Garton, Mo., 371 S.W.2d 283, 288. We find no error here.

■ Appellant next asserts that the trial court erred in giving Instruction 4 on the issue of manslaughter because "there is no evidence in the case to warrant the giving of said instruction." Apparently it is appellant's contention, although this is not clear from the wording of the assignment, that he was either guilty of murder, or by reason of self-defense he was not guilty of any crime. By reason of the facts of this case we do not necessarily agree with this contention, but for purposes of discussion shall assume it to be true. This circumstance was recently exhaustively examined in State v. Wallach, Mo., 389 S.W.2d 7, both as to the substance of the statutory provisions pertaining to this situation, and as to their constitutionality. As previously stated, the evidence in this case would support a conviction of murder in the second degree. In § 545.030, RSMo 1959, V.A.M.S., it is provided that the trial, judgment or other proceedings shall not be stayed, arrested or in any manner affected "[b]ecause the evidence shows or tends to show him [the defendant] to be guilty of a higher degree of the offense than that of which he is convicted." In addition, specifically applicable to homicide, is § 556.220, which provides that "any person found guilty of * * * manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide." An instruction on manslaughter was given in this case, and in view of the above statutory provisions, held to be constitutional in State v. Wallach, supra, appellant is not entitled to complain that the evidence of the State, if believed by the jury, authorized a finding of guilty of murder in the second degree.

The remaining assignment of error is that the trial court erred in permitting Chester Arthur to sit as a juror "for the reason that he was not in the jury box when the voir dire examination was conducted and did not answer any questions propounded touching his qualifications to sit as a juror, but the said Chester Arthur was sitting in the audience." It is then asserted in the assignment that these facts "came to

defendant after said jury had been selected."

The transcript contains nothing in support of this assignment of error, and the unverified allegations of appellant in his motion for new trial do not prove themselves. State v. Chandler, Mo., 314 S.W. 2d 897. We note that appellant does not allege that the information came to him after verdict, but instead he alleges that he obtained the information after the jury had been "selected." This implies that during the trial he knew of this circumstance. A defendant is not entitled to wait until the verdict is in, thus gambling on the result, and then complain of some misconduct of a juror or some circumstance of which he had knowledge in time to present the matter to the trial court for corrective action. State v. Burns, 351 Mo. 163, 172 S.W.2d 259, 267. Also, assuming that the circumstance did occur as alleged, there is nothing presented by affidavit or otherwise which would indicate any prejudice to appellant.

Our examination of those matters of record for which no assignment of error is required for appellate review, Criminal Rule 25.02, V.A.M.R., discloses that the information is sufficient, appellant with counsel present waived formal arraignment and entered a plea of not guilty, the verdict is in proper form and is responsive to the issues, and the punishment is within the limits prescribed by law. The record also shows that appellant and his counsel were present throughout the trial, appellant was granted allocution, and the judgment is responsive to the issues and the verdict.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM: The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.