**STATE of Missouri, Respondent,**

v.

**Sam VINSON, Appellant.**

**No. 9338.**

Missouri Court of Appeals,
Springfield District.

Nov. 28, 1973.

John C. Danforth, Atty. Gen., Karen I. Harper, Robert Presson, Asst. Attys. Gen., Jefferson City, for respondent.

James R. Robison, Sikeston, for appellant.

BILLINGS, Judge.

Defendant Sam Vinson was convicted of selling a controlled substance [§ 195.017, V.A.M.S.] known as cannabis sativa, commonly called marijuana, to an undercover agent of the Missouri Highway Patrol. The jury assessed his punishment at five years imprisonment [§ 195.200(1)(4), V.A.M.S.]. We affirm.

The forbidden sale was admitted by the defendant who unsuccessfully claimed it arose from entrapment. The singular point presented concerns a copy of LIFE magazine which was discovered in the jury box after the jury had retired to deliberate.

The LIFE of November 26, 1971, had for its cover a cut-away drawing of a human head which was divided into three compartments. Concentric circles, a bird flying sideways, and a human skull were depicted within the compartments. The words "How Disease and Drugs Affect Your Mind—The Chemistry of Madness" are on the cover and concerns an article in the magazine.

From the transcript we learn that the trial was completed in one day with the jury returning its verdict at approximately 6:30 o'clock p. m. While the jury was deliberating the LIFE magazine was found on the front (first) bench of the jury box. The magazine was face down and covered by a liquor advertisement.

The record reflects that the clerk of the court was in charge of the jury which remained in the jury box while court and counsel labored nearly an hour on the instructions. The clerk did not observe any of the jurors looking at LIFE. The jury occupied the second and third row benches. One of defendant's attorneys testified he had seen the magazine on the front bench "throughout the day" with the cover page down. The assistant prosecuting attorney

said he had noticed a magazine on the front bench during the trial but all he saw exposed to view was the liquor advertisement and he was unaware of the inscription or drawing on the cover of the magazine until it was offered as an exhibit. Defendant's other attorney, Mr. Robison, stated he was unaware of what LIFE showed or had on its cover until after the jury had retired.

At this point the trial court asked counsel for the defendant what request was being made, if any. Mr. Robison replied: "I would like to make this request, *if the jury returns a verdict of guilty in this case,* I would like to have the jury polled to determine if any member of the jury looked at that magazine or looked at the cover of it any time during the day." (emphasis added).

Shortly thereafter the jury returned to the courtroom with its verdict and defense counsel was permitted to interrogate its members. Juror Mills had looked at the cover of the LIFE and noticed the words "The Chemistry of Madness" but did not recall whether he did or did not look at the article or pictures accompanying it. Juror Douglas had seen the cover of the magazine. Another juror had picked the magazine up and "looked at what it was about." Juror Willis tore a piece of paper from the magazine to write down a name but he never read it—"Never paid no attention to it. I never read nothing when I am on a jury. I listen to the evidence." The judge then asked defendant's attorneys if there was anything further and upon being advised "nothing further" ordered the verdict received.

Defendant's ground in his motion for new trial and the point advanced in this appeal is that the presence of the magazine and its accessibility to the jury presented a "possibility of prejudice" requiring the verdict to be set aside. In support of this contention defendant cites Rule 27.19(a)(1), V.A.M.R., which authorizes the award of a new trial "when the jury has received any evidence, papers or documents, not authorized by the court. . . ." Also, defendant seeks to equate the instant situation to cases wherein jurors had read newspaper articles concerning the defendant or the proceedings of a trial in progress.

Defendant's point is an abstract statement and fails to comply with Rule 84.-04(d), V.A.M.R. [formerly Rule 83.05(e)] in that it does not " . . . state what actions or ruling of the court are claimed to be erroneous and . . . why it is contended that the court was wrong in any action or ruling sought to be reviewed. . . ." We can assume that this dereliction on the part of the defendant arises because he in fact sought no action or ruling from the trial court which was in anywise adverse to him. If we construe defendant's point as an assertion that the trial court erred in overruling his motion for a new trial, then defendant is faced with the obstacle of not having timely raised the issue in that he chose to gamble on a verdict of acquittal. No request for a mistrial or for a hearing to determine whether a basis for a mistrial existed was made when the presence of the magazine first was discovered. "A defendant who claims misconduct affecting the jury or a juror is required to call such fact to the court's attention the first moment he becomes possessed of such knowledge and has an opportunity to do so. If a defendant fails to do this at the time the misconduct happens, then, in order that he may later successfully complain thereof, it must be made to affirmatively appear that defendant and his counsel were ignorant of the infraction at the time it occurred. State v. Maples, Mo., 96 S.W.2d 26, 30 (13); State v. Blair, Mo.App., 280 S.W.2d 687, 689(2). A defendant aware of a juror's misconduct cannot gamble, through silence, on a verdict of acquittal and, after a verdict of guilty is returned, take advantage of the matter by first asserting it in his motion for a new trial. State v. McQuerry, Mo., 406 S.W.2d 624, 630 (11, 12)." State v. Robbins, 455

S.W.2d 24, 27 (7, 8) (Mo.App.1970). As evidenced by the record, the defendant conditioned any question involving the jury and the copy of LIFE [1] on the jury returning a verdict of guilty.

Because of the novelty of the issue sought to be raised, we have, nevertheless and notwithstanding defendant's non-compliance to properly preserve and present the point, carefully considered defendant's contention and have concluded to rule it on the merits. There is no evidence in the record that any juror read the article referred to on the cover of the magazine, or, that any juror who saw or handled the magazine was influenced or prejudiced as a result. The burden is on a defendant to establish his right to a new trial on the basis of allegedly prejudicial materials accessible to the jury. Gicinto v. United States, 212 F.2d 8 (8th Cir. 1954), cert. den., 348 U.S. 884, 75 S.Ct. 125, 99 L.Ed. 695 (1954). Also see Finnegan v. United States, 204 F.2d 105, 116 (8th Cir. 1953), cert. den., 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953). The experienced trial judge who presided over the trial and heard the evidence offered concerning the magazine concluded no prejudice to the defendant resulted and we do not find any abuse or arbitrary exercise of discretion. State v. Taylor, 134 Mo. 109, 161, 35 S.W. 92, 105 (1896). " ' . . . [The] court having ruled that the verdict should stand, we will not interfere with such ruling, unless upon grounds the most clear and reasons most manifest.' " State v. McGee, 336 Mo. 1082, 1092, 83 S.W.2d 98, 104 (1935). Defendant's admitted guilt and the imposition of the minimum punishment permitted under the statute supports the trial court's action in denying defendant a new trial.

The judgment is affirmed.

TITUS, C. J., STONE, J., and McHANEY, Special Judge, concur.

HOGAN, J., not sitting.

---

1. Responsibility for LIFE being in the courtroom and jury box was never established. When the motion for new trial was submitted defendant elicited testimony from the clerk that her sister-in-law gives away old magazines and "I never talked to her about it, but I am sure it was brought up here and laid down for the purpose of somebody picking it up to read."