STATE of Missouri,
Plaintiff–Respondent,

v.

James L. ANDING,
Defendant–Appellant.

No. 69959.

Supreme Court of Missouri,
En Banc.

June 14, 1988.

Frank Carlson, Union, Donald L. Wolff, Jacquelyn A. J. Rubemeyer, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

BILLINGS, Chief Justice.

Defendant James L. Anding was charged with capital murder—hiring another to kill attorney Joseph Langworthy—and convicted of manslaughter. Because there was no evidence to warrant a manslaughter submission, the judgment is reversed and defendant ordered discharged.

The State's evidence was as follows: Defendant Anding and Langworthy were attorneys practicing in Pacific, Missouri. Defendant began associating with Langworthy's killer, Richard Chandler, early in 1975. Chandler served as defendant's driver and general helper. Sometime in the middle of 1975 defendant asked Chandler if he could kill someone and Chandler responded that he would kill for a price of at least $10,000.00. Defendant did not then name the victim but stated that the person he wanted killed was someone down the street from him.

Early in 1976 defendant told Richard Chandler that he wanted to put a price on the contract and set up the killing. Richard agreed to a price of $7,000.00, half to be paid before the murder was committed and half to be paid after the job was finished. Defendant also agreed to pay all legal fees in the event that Richard was caught. At the time the agreement was made defendant told Chandler that the person he wanted murdered was Joseph Langworthy.

Over the next few months defendant and Richard Chandler followed Langworthy to his office, to a ballgame in St. Louis, and to court so that defendant could point the victim out to Chandler. Chandler then followed Langworthy around town on his own to learn his schedule. In early July defendant told Chandler that he would be out of town on the weekend of July 30 and that it would be good for the murder to take place while he was away.

Richard decided to take his brothers Michael and Darrell with him to commit the murder and on the evening of August 2, 1976 they drove to Pacific and parked their car outside of Langworthy's office where Langworthy was holding appointments that evening. Sometime between 8:00 and 8:30 p.m. the brothers entered Langworthy's office, ostensibly to obtain a divorce for Darrell, but in reality to case the office. They spoke with Langworthy for a few minutes concerning the phony divorce and then left the office and returned to their car. Richard Chandler then went to defendant's office and called defendant long distance to tell him that "the pigeon is sitting" and he would "take care of it in a little while", to which defendant responded "okay." Richard returned to his car, and he and his brothers waited for Langworthy's secretary to leave.

The secretary left around 9:30 and sometime between 9:30 and 9:45 p.m. the Chandlers went back upstairs to Langworthy's office. Richard was carrying a 12 inch hunting knife in his boot and a .357 magnum pistol in his hand. The Chandlers first told Langworthy that it was a robbery and ordered the attorney to remove his money from his pocket and put it on the desk. Langworthy complied. However, Richard Chandler then handed the gun to one of his brothers, took the hunting knife out of his boot, and told Langworthy that somebody wanted him dead. Langworthy pleaded for his life, but to no avail. Michael and Darrell held him in his chair while Richard stabbed him in the stomach. Richard then took the knife laid it on Langworthy's neck and slit his throat from ear to ear. The victim bled to death in about one minute. The trio went downstairs, got into their car, and drove away.

Langworthy's murder went unsolved for nearly two years. However, in 1978 local authorities obtained information on the murder from Michael Chandler. A warrant was issued for Richard Chandler's arrest on charges of capital murder on June 23, 1978.

Defendant and another attorney originally represented Richard on the murder charge but in September 1978 Richard fired defendant and implicated him in the murder of Joseph Langworthy. On the basis of Richard's testimony before a grand jury, defendant was indicted on a charge of capital murder in 1978. This charge was dropped a short time later, however, when Richard recanted his testimony. In 1985 Chandler changed his mind and agreed to testify for the State against defendant who was then charged again with capital murder.

A jury trial was held in February 1986. Defendant was specifically acquitted of capital murder and of second degree murder but was found guilty of manslaughter and was sentenced to ten years in prison.

The trial judge instructed the jury on manslaughter, although stating "there was no evidence to support the submission of manslaughter." However, the trial court concluded that *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975), required the automatic submission of manslaughter instructions in any case where there was evidence of first or second degree murder. Defendant contends that the trial court committed reversible error in instructing the jury on manslaughter because there was no evidence to support such a submission.

The traditional rule in Missouri is that for a homicide to be reduced from murder to manslaughter there must be evidence of sudden provocation sufficient to indicate an absence of malice and deliberation. *State v. Smart,* 328 S.W.2d 569, 574 (Mo.1959); *State v. Clough,* 327 Mo. 700, 705, 38 S.W.2d 36, 38 (Mo.1931).

In *State v. Williams,* 442 S.W.2d 61, 64 (Mo. banc 1968), the court established a

presumption that an intentional killing was second degree murder and placed the burden on the defendant to produce sufficient evidence of *adequate provocation* to rebut the presumption of malice and deliberation. *State v. Ayers,* 470 S.W.2d 534 (Mo. banc 1971), relieved the defendant of this burden and placed the responsibility on the trial judge to determine if the issue of *adequate provocation* arose. *Ayers,* however, held that if as a matter of law there is an entire absence of evidence upon which to rest a verdict of guilty of manslaughter, the trial court can properly instruct the jury only as to second degree murder. Id. at 538. *Ayers,* therefore, continued to require some evidence of manslaughter to warrant an instruction on that charge. (Emphasis added.)

*State v. Stapleton,* 518 S.W.2d 292, 300 (Mo. banc 1975), incorrectly interpreted *Ayers* to hold that a trial court is automatically required to submit manslaughter instructions in homicide cases even when there is no evidence of lack of malice or premeditation—no evidence of provocation. *Stapleton's* misinterpretation of *Ayers* was adopted by MAI–CR in March 1975. MAI–CR 6.02, Notes on Use 6, p. 6–4; Notes on Use 4(c)(2), p. 6–1C; and MAI–CR 6.08, Notes on Use 5, require the automatic submission of manslaughter instructions whenever the evidence warrants the submission of first or second degree murder.

*Stapleton's* error was soon recognized in *State v. Mudgett,* 531 S.W.2d 275 (Mo. banc 1975), *cert. denied* 426 U.S. 910, 96 S.Ct. 2234, 48 L.Ed.2d 835 (1976). In *Mudgett,* the court strongly implied that because *Stapleton* misinterpreted *Ayers* the automatic submission rule did not go into effect until it was adopted as a procedural rule in MAI. The court stated that the automatic submission rule was effectuated by MAI–CR 6.02, not by *Ayers,* any contrary implication from the language in *Stapleton* notwithstanding. Id. at 281. Since the homicide in *Mudgett* occurred prior to the adoption of the automatic submission rule by MAI, the court applied the traditional rule of *Clough* as modified by *Ayers. See also*

*State v. Franco,* 544 S.W.2d 533, 538 (Mo. banc 1976), *cert. denied* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). (On motion for rehearing, court concluded that automatic submission rule only applied to cases tried after March 1, 1975, the effective date the rule was adopted by MAI).

Several more recent opinions have also treated the automatic submission rule as procedural and therefore not binding to the extent that the rule conflicts with the substantive law as stated in *Clough, Ayers,* and other cases. *State v. Kurtz,* 564 S.W. 2d 856, 862 (Mo. Banc 1978), held that the failure to give a manslaughter instruction in a prosecution for first degree murder by poison was not manifestly unjust under plain error review, regardless of the requirements of MAI–CR 6.02, Notes on Use 6. *State v. Martin,* 602 S.W.2d 772 (Mo. App.1980), reversed a manslaughter conviction, despite the mandate of *Stapleton* and MAI, where there was no evidence to support a manslaughter instruction. *Love v. State,* 670 S.W.2d 499, 503–04 (Mo. banc 1984), held that the movant in a Rule 27.26 action was not prejudiced by the failure of counsel to request a manslaughter instruction in a second degree murder case where there was no evidence to convict the defendant of manslaughter.

■ The holdings in *Kurtz, Martin* and *Love* would not have been possible if Stapleton created a substantive rule of law requiring the automatic submission of manslaughter instructions in all homicide cases. *See* Venker, *Missouri Homicides: Lesser Included Offenses and Instructing Down,* 48 Mo.L.Rev. 935 (1983). The Court concludes the automatic submission rule is not a substantive rule of law arising out of *Stapleton,* but merely a procedural rule adopted by MAI.

Procedural rules adopted by MAI cannot change the substantive law and must therefore be interpreted in the light of existing statutory and case law. *Mo.Const. Art. V, § 5; State v. Dixon,* 655 S.W.2d 547, 558 (Mo.App.1983), *cert. denied* 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). The

substantive law at the time of the offense [1] required some evidence of provocation to convict a defendant of manslaughter. *See State v. Clough,* 38 S.W.2d at 38 and *State v. Ayers,* 470 S.W.2d at 538. The automatic submission rule is of no effect in this case because it conflicts with the substantive law at the time of the murder. The rule has also been abolished by statute. *See Sections 565.025, RSMo (Cum.Supp. 1984)* and *556.046.2, RSMo 1978,* which obligate the Court to instruct the jury on manslaughter as a lesser included offense only if there is an evidentiary basis for convicting the defendant on that charge. Thus, defendant's manslaughter conviction cannot stand unless there is some evidence of adequate provocation in the record.

 The record in this case clearly indicates that defendant was either guilty of deliberate, premeditated murder or of nothing at all. If the State's evidence is believed defendant contracted to have Joseph Langworthy murdered more than a year before the murder took place. During that year defendant allegedly planned the murder with the help of Richard Chandler. The time of the murder was purposefully set to coincide with a time when defendant was out of the state. The brutal slaying of Langworthy was carried out while the victim was being held down in his chair. There are simply no facts in this case upon which to conclude that the killing of Joseph Langworthy was provoked or was committed without deliberation, malice, and premeditation. Consequently, the trial court erred in instructing the jury on manslaughter because there was no evidence to support such an instruction. The procedural mandate of MAI–CR and the ruling in *Stapleton* requiring automatic submission of manslaughter should not be followed.

Defendant also contends his manslaughter conviction is barred by the three year statute of limitations. Section 541.200 RSMo 1969. The murder in this case occurred on August 2, 1976. The instant charge was filed March 15, 1985, 8½ years after the murder took place. Because the judgment must be reversed and defendant ordered discharged for the reasons already stated, the Court does not deem it necessary to consider this contention or the State's argument of waiver. *See:* 21 Am. Jur.2d Criminal Law section 223, 225 (1981); *State v. Chevlin,* 284 S.W.2d 563, 567 (Mo.1955); *State v. Civella,* 364 S.W.2d 624, 627–28 (Mo.App.1963), *Chaifetz v. U.S.,* 288 F.2d 133 (D.C.Cir.1960); and 47 A.L.R.2d 892. *See also* Rule 24.04(b)(2).

The judgment is reversed and defendant ordered discharged.

DONNELLY, WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., concurs in result in separate opinion filed.

BLACKMAR, Judge, concurring in result.

I agree that the judgment must be reversed, but cannot agree with the reasons set forth in the principal opinion.

The defendant was charged with capital murder. Instruction 6 set out the five elements of capital murder as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on August 2, 1976, in the County of Franklin, State of Missouri, Richard Chandler, alone or together with, Darrell Chandler and/or Michael Chandler caused the death of Joseph Langworthy by stabbing him, and

Second, that Richard Chandler, Darrell Chandler, Michael Chandler and the defendant intended to take the life of Joseph Langworthy, and

Third, that Richard Chandler, Darrell Chandler and Michael Chandler knew that they were practically certain to cause the death of Joseph Langworthy, and

Fourth, that Richard Chandler, Darrell Chandler, Michael Chandler and defendant considered taking the life of Joseph Langworthy and reflected upon this mat-

---

**1.** The definition of voluntary manslaughter now includes adequate provocation as an element of the offense. *See* § 565.023.1, RSMo (Cum.Supp. 1984).

ter coolly and fully before he was killed, and

Fifth, that the defendant knowingly and intentionally aided or encouraged Richard Chandler who engaged in the conduct submitted in the above paragraphs,

then you will find the defendant guilty of capital murder.

The jury was also instructed on murder in the second degree, which omitted paragraph Fourth of the capital murder instruction, while copying the other four elements word for word.

The jury found the defendant guilty under the manslaughter instruction, which contained only two paragraphs, as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that Richard Chandler, alone or together with, Darrell Chandler and/or Michael Chandler caused the death of Joseph Langworthy by stabbing him, and

Second, that the defendant knowingly and intentionally aided or encouraged Richard Chandler who engaged in the conduct submitted in the above paragraph,

then you will find the defendant guilty of manslaughter.

It is patent that the manslaughter instruction did not require any finding that was not contained in the verdict director for capital murder. I always understood that a prosecutor had the discretion to charge a lesser offense, even though the evidence supported a greater charge, and conviction of the lesser might be irrational.[1] A lesser offense is one which contains some, but not all, of the elements of the greater.

Also of interest are the provisions of § 556.220, RSMo 1969, in effect when the offense was alleged to have been committed and reading as follows:

Upon indictment for any offense consisting of different degrees, as prescribed by this law, the jury may find the accused not guilty of the offense charged in the indictment, and may find him guilty of any degree of such offense inferior to that charged in the indictment, or of an attempt to commit such offense, or any degree thereof; and any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide.[2]

Instruction 10 is deficient, however, because the facts required to be proved are not appropriately hypothecated. What the evidence shows is that the defendant promised Chandler a sum of money for killing Langworthy and then associated with Chandler in stalking Langworthy to learn his schedule. The term "aided" does not adequately inform the jury as to what it must find, because it omits essential re-

---

1. Section 556.046, RSMo 1986, provides some guidance on this issue. Subsection 1 provides that, "A defendant may be convicted of an offense included in an offense charged in the indictment or information. ..." Subsection 2 then states, "The court *shall not be obligated* to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." (Emphasis supplied). The obvious inference is that, although not obligated to do so, the court does not lack the authority to instruct the jury on a lesser included offense not supported by the evidence. This statute was adopted after the offense charged against the defendant is alleged to have occurred, but states sound general principles.

2. The constitutionality of this statute was upheld in *State v. Wallach,* 389 S.W.2d 7 (Mo.

1965). This Court held that "the Missouri rule is clear that when the evidence is sufficient to support a conviction of first degree murder a defendant is not entitled to complain that a submissible case was not made to a lesser degree of homicide." 556.220, RSMo 1959. The Court also noted that 545.030.1(17), RSMo 1959, precluded an appellate court from staying or otherwise affecting the judgment of conviction "because the evidence shows ... [the defendant] to be guilty of a higher degree of the offense than that of which he [was] convicted." *Wallach, supra,* at 12. This statutory provision remains unchanged to this day. 545.030.1(17), RSMo 1986. *See also, State v. McQuerry,* 406 S.W.2d 624, 629 (Mo.1966) (court rejected defendant's argument that a manslaughter instruction was erroneous because the evidence showed he was either guilty of second degree murder or innocent).

quirements stating that the person responsible for the criminal conduct of another must act "with the purpose of promoting the commission of an offense."[3] It is not even charged that the defendant aided in the "planning" of the offense, which more appropriately describes the conduct shown by the evidence. The instruction is not sufficient to submit the offense of manslaughter against this defendant, and for this reason alone the judgment must be reversed.[4]

I would be reluctant to allow a defendant to benefit because of an uncritical following of a note on use to MAI, if the instruction submits the ultimate facts necessary to support conviction. Contrary to what some of its advocates have claimed, however, MAI instructions, civil and criminal, do not excuse lawyers and judges from resorting to the case law and the statutes. MAI is not a massive project of judicial, or committee, legislation. *State v. Mudgett,* 531 S.W.2d 275 (Mo. banc 1976), demonstrates ample reason to omit a manslaughter submission in a case such as this one, where there is absolutely no state of facts which would support the giving of the instruction and a manslaughter verdict could be reached only by ignoring elements which the jury must necessarily have found in order to find guilt. Lawyers and judges continue to believe, however, that MAI is scriptural, and I would require a demonstration of prejudicial legal error to abort a conviction in which MAI has been followed.

I have serious doubts about the capital murder verdict director in this case, and about the adequacy of MAI to submit the "hired killer" scenario presented in this record. Would it not be better to hypothecate the ultimate facts relied on by the prosecution to support the charges, in terms of the evidence in the case at hand, rather than relying on a mold into which the facts of the particular case can only be forced uneasily?

Perhaps such holdings as *Brown v. St. Louis Public Service Company,* 421 S.W. 2d 255 (Mo. banc 1967), deter lawyers and judges from modifying MAI forms so as to frame instructions which speak in terms of the facts of the case, rather than obliquely. If so, our instruction system is seriously flawed, with emphasis on ritual rather than communication. I have always had an uneasy feeling that MAI does not do well by the atypical case. *Cf. Williams v. Enochs,* 742 S.W.2d 165 (Mo. banc 1987), in which the verdict directing instruction used an MAI formulation which did not submit the essential elements of a real estate commission claim.

The jury must have believed that the defendant had a part in the murder of Joseph Langworthy. Thus a conviction of an offense more heinous than many for which this Court has affirmed death sentences must be aborted because of the failure of MAI–CR to reflect the current state of the authorities.[5] But the facts give us no alternative.

I concur in the result reached by the principal opinion.

---

3. The quotation is taken from § 562.041.1(2), RSMo 1986. This statute was not in force at the time Langworthy was killed, but it states a sound proposition about the criminal liability of a person for the acts of another. *See State v. Grebe,* 461 S.W.2d 265 (Mo. banc 1970), opinion by Donnelly, J.; 1 Devitt & Blackmar Federal Practice and Instructions (3rd Edition), § 12.01; § 12.03.

4. The disjunctive "or encouraged" produces an alternative which is probably impossible of application to the facts at hand, and which, itself, probably renders the instruction erroneous.

5. A rereading of *State v. Ayres,* 470 S.W.2d 534 (Mo. banc 1971), and *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975), persuades me that neither opinion commands a manslaughter instruction in a case like this one. But the legislature has removed any doubts and we need not probe further into ancient history.