**STATE of Missouri, Respondent,**

v.

**James L. DUNN, Appellant.**

**No. 22711.**

Missouri Court of Appeals, Southern District, Division Two.

June 7, 2000.

---

Nancy A. McKerrow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

James Dunn ("Defendant") appeals his conviction by a Greene County jury of assault in the second degree, § 565.060.1(5), RSMo.1994, for which he was sentenced, as a prior and persistent offender, § 558.016, RSMo.1994, to twenty years' imprisonment.[1]

Defendant raises three points of trial court error. In his first point, he posits that the trial court erred in instructing the jury on assault in the second degree, the offense that he was ultimately convicted of, in that there was no evidence presented that Defendant acted recklessly. In his second point, Defendant posits that the trial court committed reversible error in overruling his motion for mistrial when it came to the attention of the trial court that two jurors were overheard discussing the case. In his final point on appeal, Defendant contends that the trial court erred in refusing to admit into evidence Defendant's proffered exhibit of a witness's prior inconsistent statement. We affirm the judgment of the trial court.

*Facts.*

The Defendant does not challenge the sufficiency of the evidence supporting his conviction. This Court accepts as true all evidence supporting the verdict, including all favorable inferences therefrom and disregards all contrary evidence and inferences. *State v. Carlile*, 9 S.W.3d 745, 746 (Mo.App.2000). On the evening of May 1, 1997, a group of people, including the victim, were gathered outside a residence in Springfield, Greene County, Missouri. Danny Drake, Steve Slavens, and Darren Slavens were on the porch of the residence talking and getting ready to go inside. Dana Friend was sitting in her car in the driveway talking to the victim, Juanita Fisher, who was beside the car walking back toward the residence. According to trial testimony, Defendant drove slowly by the house, stuck a shotgun out the driver's side window, and fired a shot in the direction of the residence. Ms. Fisher was struck in the head with a shotgun pellet that lodged under the skin next to the skull. The remainder of the pellets from the shotgun blast were found lodged in a wall of the residence near the garage.

Testimony was presented that Defendant had driven by the house going the other direction, i.e., with the passenger door toward the residence, a short time prior to the shooting. There was testimony that Defendant was accompanied in the car by his girlfriend, Deanna Brand, both when he first drove by the residence in question and at the time of the shooting. Gunpowder residue was found on Defendant's hands. Defendant's theory was that

---

1. Defendant was indicted on the charge of assault in the first degree, § 565.050, RSMo. 1994. All statutory references are to RSMo. 1994 unless otherwise noted.

Ms. Brand had fired the shot. Ms. Brand supported Defendant's testimony. She testified that she had obtained the shotgun from one unnamed man, and had gotten another unnamed man to drive her by the house to enable her to fire the weapon. She could not explain why there was no gunpowder residue found on her. She acknowledged that she might have been wearing gloves, but stated she couldn't remember.

At Defendant's trial, Judge Deaton, the presiding judge, was notified by Judge Sweeney that Judge Sweeney had overheard one of the jurors in the case at bar ask another juror in the hallway "do you think he's out on bond?" When questioned by the trial court, the bailiff advised the court that two of the jurors were behind the other jurors in the hallway talking and that one of the two had asked the bailiff if Defendant was out on bond. Defense Counsel moved for a mistrial. The prosecutor objected to the mistrial and suggested that the jury be admonished, a suggestion that Defense Counsel, in turn, objected to as being futile. Defense counsel sought no further relief. The trial court denied the request for mistrial and took no further action.

Also at trial, Defendant attempted to enter into evidence the written statement Mr. Slavens made to the police the night of the incident in question. In that document, Mr. Slavens stated that he heard a shot and then he turned around and saw Defendant driving by, pointing a gun out the driver's side window. On direct-exam-

ination, Mr. Slavens testified that a portion of his written statement to police was incorrect: "The part about being turned around, because I was already turned around." He testified that he told police "[t]hat [he] turned around and then [he] saw [Defendant]" but that actually he "was already turned around when [Defendant] came around the corner." On cross-examination, Mr. Slavens testified that he told the police that he was walking from the driveway toward the residence "and [Defendant] came around the corner [in his car] and I turned around, but that's where I messed up because I was already turned around because Juanita or Dana, one of them hollered at me." Mr. Slavens was then asked "[i]sn't it true you told the police that you heard the shot and then you turned around and saw it?" Mr. Slavens answered, "No." Defense counsel attempted to have Mr. Slavens read the statement into the record at one point and then later asked that the written statement be admitted into evidence. Both requests were denied.

Defendant was convicted of second degree assault. He appeals.

*Discussion and Decision.*

*I.*

■ In his first point, Defendant contends that the trial court erred in instructing the jury on second degree assault.[2] Defendant claims that "there was no evidence in the case to support a finding of reckless conduct since the State's evidence indicated that if [Defendant] was guilty at

---

2. The jury was read Instruction No. 6 which read, in pertinent part, as follows:

   If you do not find [Defendant] guilty of assault in the first degree as submitted in Instruction No. 5, you must consider whether he is guilty of assault in the second degree as submitted in this instruction.

   If you find and believe from the evidence beyond a reasonable doubt:
   
   That on or about the 2 nd day of May, 1997, in the County of Greene, State of Missouri, [Defendant] recklessly caused physical injury to Juanita Fisher by means of discharge of a firearm,

then you will find [Defendant] guilty of assault in the second degree.

. . .

A person acts "recklessly" as to causing serious physical injury if he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

all, he was guilty of intentionally firing a shotgun from a slow moving vehicle and there was no basis to find that that was a reckless act."

▮ "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050. "A person commits the crime of assault in the second degree if he: ... (5) Recklessly causes physical injury to another person by means of discharge of a firearm." § 565.060.

A person **"acts knowingly"**, or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 562.016.3.

A person **"acts recklessly"** or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

§ 562.016.4. Assault in the second degree is a lesser included offense of assault in the first degree. *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999).

The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

§ 556.046.2. However, "Section 556.046.2 does not prohibit the giving of lesser included offense instructions." *State v. Beeler*, 12 S.W.3d 294, 300 (Mo. banc 2000). "In the plainest terms, the statute creates no prohibition on instructing on lesser included offenses. This *Court* cannot amend the statute to include obligations not imposed by the legislature." *Id.*

We first note that the Missouri Supreme Court has recently held, in the context of a case of "imperfect self-defense," that "[t]he argument that only evidence of an accidental act or an accidental result supports voluntary manslaughter is incorrect." *Id.* at 297. The Supreme Court overruled a line of cases that stood for "the proposition that self-defense in a homicide matter forecloses the possibility of an instruction on involuntary manslaughter because such offense requires an accidental act or unintended consequence...." *Id.* at 299.

In *Beeler*, the defendant, who was a city marshal, shot and killed a man during a traffic stop. *Beeler*, 12 S.W.3d at 296. The defendant claimed the man attacked him with a hammer. *Id.* The defendant fired five shots, killing the man while he sat in his car. *Id.* The driver's window of the car was rolled down about nine and a half inches and the driver's door was broken and could only be opened by reaching out of the window and grabbing the exterior handle. *Id.* A hammer was found on the floorboard underneath the victim's foot. *Id.* The jury was given a second degree murder instruction which included a self-defense instruction. *Beeler*, 12 S.W.3d at 297. They were also given a separate instruction on involuntary manslaughter which contained no reference to self-defense. *Id.* The defendant was convicted of involuntary manslaughter and claimed on appeal that "the word 'reckless' means an unintentional or accidental act or consequence," *id.*, and that since "the shooting ... here was unmistakably an intentional act done with an intent to kill in self-defense," *id.*, the trial court erred in giving the involuntary manslaughter instruction.

The court in *Beeler*, discussed two cases, *State v. Isom*, 906 S.W.2d 870, 873 (Mo. App.1995), and *State v. Anding*, 752 S.W.2d 59 (Mo. banc 1988), relied on heavi-

ly by both the *Beeler* defendant and Defendant in the case at hand.

In *Isom*, the defendant shot a man in the chest at the defendant's pool hall, killing him. *Isom*, 906 S.W.2d at 872. The defendant claimed that he had intended to shoot the victim in the arm because he thought the victim had a gun but that people were "running stampede [sic] made me have to move the pistol and hit him up there, I didn't mean to kill him." *Id.* The jury was instructed on involuntary manslaughter, *inter alia,* over Defendant's objection and Defendant was convicted of that crime. *Id.* This Court held that:

> [The][d]efendant's actions in the instant case went beyond recklessness and constituted conduct which was likely to produce death. As indicated earlier, [the][d]efendant's theory that he shot in self-defense indicates a voluntary, intentional act. There was no evidence of recklessness or an unintentional or accidental shooting. Conduct which is not involuntary and transcends mere recklessness will not support an instruction on involuntary manslaughter.

*Id.* at 873–74. *Isom* was overruled by the Supreme Court in *Beeler* "to the extent ... [it stood] for the proposition that self-defense in a homicide matter forecloses the possibility of an instruction on involuntary manslaughter because such offense requires an accidental act or unintended consequence...." *Beeler*, 12 S.W.3d at 299.

In *Anding*, the defendant, an attorney, hired his driver to kill another attorney for $7,000. *Anding*, 752 S.W.2d at 59. The killer completed his task after extensive preparation and planning, killing the victim, at the defendant's request, on a weekend that the defendant was out of town. *Id.* at 60. A jury instruction on manslaughter was submitted to the jury, al-

though the trial court stated "there was no evidence to support the submission of manslaughter." *Id.* The Missouri Supreme Court held that the instruction on manslaughter was error in that the record in the case "clearly indicate[d] that [the] defendant was either guilty of deliberate, premeditated murder or of nothing at all." *Id.* at 62. The *Beeler* court held that *Anding* was distinguishable not only for the fact that in *Anding* the defendant was "charged with premeditated and deliberate murder," *Beeler*, 12 S.W.3d at 299, but also because:

> [t]he offense in *Anding* occurred in 1976, prior to adoption of our present homicide scheme, which includes involuntary manslaughter, prior to the current statutory definition of "reckless" being adopted, prior to the adoption of sec. 556.046 regarding when the courts were obligated to instruct on lesser offenses and prior to the adoption of sec. 562.021. The latter section provides that when recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly. *No similar statute provides that evidence of premeditation and deliberation also establishes recklessness.*

*Beeler*, 12 S.W.3d at 299 (emphasis added); *see* § 562.021.2.[3]

As to section 562.021:

> [t]his provision of the statute was enacted for the very purpose of avoiding the argument here asserted 'that something was not done recklessly because it was done knowingly or purposely.' The criminal code adequately advises those indicted for second degree murder that they may be convicted of the lesser included offense of involuntary manslaughter by recklessness.

*State v. DeWeese*, 751 S.W.2d 389, 391 (Mo.App.1988); *see also State v. Adams*,

---

**3.** "If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts purposely or knowingly or recklessly. When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly. When acting knowingly suffices to establish a culpable mental state, it is also established if a person acts purposely." § 562.021.2.

654 S.W.2d 376, 377 (Mo.App.1983)("Although the evidence might well have justified the jury in finding that the defendant, in firing the gun, acted 'purposely' or 'knowingly,' ... the jury was not thereby precluded from finding that the defendant acted 'recklessly' as charged in the information and submitted in the state's verdict directing instruction.")

We note that the Missouri Supreme Court in *Beeler* was faced with a similar situation to the case at bar, i.e. a situation where the jury was instructed on a lesser-included offense over the objection of the defendant.[4] The court found that there was no statutory prohibition on instructing on lesser included offenses. The court then stated:

> Nevertheless, if there is a logical inconsistency in giving a lesser included offense instruction in a particular factual context so as to result in some deprivation of right, such as double jeopardy, it would be error to so instruct even in the absence of a statutory prohibition on giving the instruction.

*Beeler*, 12 S.W.3d at 300. Here we see no logical inconsistency between the jury's acquittal of assault in the first degree and conviction of assault in the second degree. As previously set out, under section 562.021, "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." Further, the jury's acquittal of defendant on the charge of assault in the first degree does not necessarily mean that they did not believe that he acted knowingly. It could also mean that they did not believe that the victim sustained "serious physical injury" as required under the jury instruction for assault in the first degree. The jury instruction for assault in the second degree under section 565.060.1(5) only requires a finding of "physical injury" to the victim "by means

of discharge of a firearm." Because there is neither a statutory prohibition nor a logical inconsistency between acquittal of assault in the first degree and conviction of assault in the second degree under section 565.060.1(5), the giving of the lesser included offense instruction is not necessarily error. *See Beeler*, 12 S.W.3d at 300. In the context of this case, we find no error in the trial court's giving of an assault in the second degree instruction. Defendant's first point on appeal is denied.

## II.

■ In his second point, Defendant claims the trial court erred "in overruling defense counsel's motion for mistrial ... when it came to the trial court['s] and counsels' attention that two of the jurors were overheard discussing the case, specifically speculating whether [Defendant] was out on bond" in that such ruling violated Defendant's rights to due process of law and a fair trial before a fair and impartial jury.

■ "[G]ranting a mistrial is a drastic remedy that should be used only when necessary to cure grievous prejudice." *State v. Hicks*, 959 S.W.2d 119, 122 (Mo. App.1997). "When considering juror misconduct, the trial court has wide discretion in deciding whether to declare a mistrial," *State v. Revelle*, 809 S.W.2d 444, 447 (Mo. App.1991), and "[a] trial court's ruling as to the existence of juror misconduct will not be disturbed absent a finding of abuse of discretion on review." *State v. Smith*, 944 S.W.2d 901, 921 (Mo. banc 1997).

> A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of

---

4. The Missouri Supreme Court in *Beeler* dealt only with the question of whether the trial court was prohibited from giving the involuntary manslaughter instruction and did not address the question of whether the defendant would have been *entitled* to an involuntary manslaughter instruction had he requested one.

the action taken by the trial court, then it cannot be said the trial court abused its discretion.

*Hicks*, 959 S.W.2d at 122. "The key consideration is the extent to which [D]efendant's right to a fair trial has been prejudiced." *State v. Teter*, 724 S.W.2d 538, 540 (Mo.App.1986).

■ "A defendant in a criminal case is entitled to a fair trial based solely on the evidence presented in court." *State v. Cook*, 676 S.W.2d 915, 917 (Mo.App.1984). "Juror misconduct during a felony trial requires reversal for a new trial, unless the State affirmatively shows that the jurors were not subjected to improper influences as a result of the misconduct." *State v. Thompson*, 955 S.W.2d 828, 830 (Mo.App.1997). "The burden does not shift to the State to disprove improper influence, however, until juror misconduct is actually established." *Id.*

Here the evidence showed that one of the Greene County judges overheard one juror ask another whether Defendant was "out on bond." The bailiff confirmed that the two had been talking separately and that one of the two jurors had also asked the bailiff if Defendant was out on bond. The bailiff informed the court that he had not answered the juror's question and had motioned with his hands that it was an inappropriate question. Defendant's trial counsel asked for a mistrial and was refused. Defendant's trial counsel opposed the prosecutor's suggestion that the judge admonish the jury to not discuss the case. The judge stated "I'm not satisfied that ... the juror thought the juror was talking about the case by making the kind of comment or asking that question of the bailiff.... I think they've done a very good job of following the Court's instructions."

We first note that the jurors in question here were not discussing the merits of the case. We agree with the trial judge in his belief that they might very well not have realized that they were not permitted to discuss whether Defendant was "out on bond." Additionally, no information was provided to the jurors as to whether Defendant actually was or was not "out on bond" since the bailiff simply indicated to the jurors that they were not allowed to talk about that subject. Accordingly, we can find no abuse of discretion on the part of the trial court in refusing to declare a mistrial on the basis of such limited speculation by a juror.

■ Defendant, however, further complains that the trial court should have held an evidentiary hearing to fully determine the extent of any juror misconduct and determine whether such misconduct created prejudice. We find no case law holding that the trial court had a duty to question the jurors *sua sponte* under these circumstances, nor has Defendant directed us to any. *See Teter*, 724 S.W.2d at 540. Also, Defendant demonstrated no effort to present the testimony or affidavit of any juror, or any other witness either at trial or at the hearing on his motion for new trial. *See Hicks*, 959 S.W.2d at 122; *Teter*, 724 S.W.2d at 539; *State v. O'Dell*, 684 S.W.2d 453, 470 (Mo.App.1984); *see also Smith*, 944 S.W.2d at 921. We find the trial court did not abuse its discretion in failing to hold an evidentiary hearing on the matter. Defendant's second point is denied.

### III.

■ In his third point on appeal, Defendant complains that the trial court erred in refusing to admit Mr. Slavens' "handwritten statement to the police concerning the shooting [in question] ... in that [the handwritten statement] was a prior inconsistent statement of the witness and it was admissible as substantive evidence since this was a case prosecuted under § 565.050."

■ "The trial court is vested with broad discretion to admit and exclude evidence at trial." *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied* 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d

1043 (1999). "Error will be found only if this discretion was clearly abused." *Id.*

Here, Defendant attempted to introduce into evidence, Mr. Slavens' written statement to police. In his written statement, Mr. Slavens stated that he had just gotten to his grandmother's house "and started to walk to the house ... and 'pop' a ... shot was fired[.] I turned around into the yard and saw the Brown 4 door car with a white suspect male. [Defendant] was in the driver's seat[ ] looking out the window and he had a[g]un." During defense counsel's cross-examination of Mr. Slavens, the following exchange was had:

> Defense Counsel: Could you tell the jury what you told the police officer with respect to your location just before the shooting.
>
> Mr. Slavens: I told the police officers that I had been out with my cousin Dana riding around, we pulled into the driveway, got out, started to head towards the house, and [Defendant] came around the corner and I turned around, but that's where I messed up because I was already turned around because Juanita or Dana, one of them hollered at me. But anyway I saw a shot fired and it was [Defendant]. And that's what I told the police.
>
> Defense Counsel: Isn't it true you told the police that you heard the shot and then you turned around and saw it?
>
> Mr. Slavens: No.
>
> Defense Counsel: Well, Your Honor, that's what he has written and that's why I would like him to read this. He's not answering—
>
> Mr. Slavens: That's what I'm saying, though, I was scared, I had just been shot at, and –

Defendant contends that prior inconsistent statements are admissible under section 491.074 both to impeach the witness' trial testimony and as substantive evidence, and that "[t]he only necessary foundation is the inquiry as to whether the witness made the statement and whether the statement

is true." *State v. Bowman*, 741 S.W.2d 10, 14 (Mo. banc 1987). However, we need not comment on the admissibility of Mr. Slavens' written statement because we determine that even if we assume *arguendo* that the trial court erred in excluding the statement, Defendant was not prejudiced by such error.

"We review trial court decisions regarding the admissibility of evidence 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Santillan*, 1 S.W.3d 572, 579 (Mo. App.1999) (quoting *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996)); *see State v. Crump*, 986 S.W.2d 180, 188 (Mo. App.1999). Defendant argues that, contrary to the assertions in the State's brief on appeal, the written statement was not merely cumulative of Mr. Slavens' trial court testimony in that it impeached him on the issue of whether he turned around prior to or after hearing the shot. We do not believe that this is a decisive issue. Even in Mr. Slavens' written statement, the difference lies only in whether he actually saw the shot fired. He still states in his written statement that he heard a shot and turned around and saw Defendant in the car and that Defendant "had a gun." Further Mr. Slavens was emphatic in his testimony at trial that he was shaken up at the time he gave the statement, and clearly stated that the written statement was incorrect and that he had actually seen Defendant come around the corner in his car and fire the shot. Further still, at trial Danny Drake also clearly identified Defendant as the person who fired at the group from the car; Defendant was seen driving the same car past the house in question shortly before the shooting; and gunshot residue was found on Defendant's hands. Even if the trial court erred in failing to admit Mr. Slavens' written statement, we find Defendant was not prejudiced by such error. Defendant's third and final point is denied.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., CONCURS.

PREWITT, J., CONCURS.