

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37373 |
| | ) | |
| BENNY LYNN JOHNSON, | ) | **Filed: August 4, 2023** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

The Honorable Joe Z. Satterfield, Judge

**<u>AFFIRMED</u>**

Benny Lynn Johnson appeals the trial court's judgment convicting him of three counts of driving while intoxicated resulting in death and two counts of leaving the scene of an accident following a jury trial in the Circuit Court of Stoddard County. Mr. Johnson raises three points on appeal focusing on his two convictions for leaving the scene of an accident. Mr. Johnson argues in Points I and II that the trial court plainly erred and violated his right to be free from double jeopardy by accepting two jury verdicts for two counts of leaving the scene of an accident and sentencing him on both counts. In Point III, Mr. Johnson argues that the trial court abused its discretion by not

1

granting his request for a mistrial due to juror misconduct. Finding no merit to any of his points relied on, we affirm the trial court's judgment.

### Points I and II:  The Trial Court did not Plainly Err in Accepting the Jury's Verdicts and Sentencing Mr. Johnson on Two Separate Counts for Leaving the Scene of an Accident.

Mr. Johnson argues in Points I and II that his two convictions for leaving the scene of an accident violate the double jeopardy clause. Because both points are sufficiently similar, we address them together. In Point I, Mr. Johnson argues section 577.060[1] includes a single unit of prosecution tied to each single accident. In Point II, he argues that leaving the scene of one accident is a continuing course of conduct offense under section 556.041. He argues that by convicting him twice of leaving the scene of an accident, he received multiple punishments for the same offense. We disagree.

*Facts Pertinent to Points I and II*

On July 4, 2017, Ms. T.S. took her three children, 12-year-old T.S., 10-year-old P.S., and two-year-old J.V., to watch the fireworks show in Malden. On her way back to the house where she was staying, she got a flat tire and pulled over on the side of a narrow rural road.

Ms. T.S. and the children waited for help to arrive in their black minivan with the flashers on. When Ms. T.S.'s boyfriend, Mr. D.V., and J.V.'s great-grandmother, Ms. J.R., arrived, Ms. J.R. parked her Chevy Cruze, a "small tan car," behind Ms. T.S.'s minivan. It became apparent they did not have the tools necessary to repair the tire, so they decided to leave in Ms. J.R.'s car and come back in the morning to fix the flat tire.

---

[1] References throughout are to section 577.060, RSMo 2016. All other statutory references are to RSMo Cum.Supp. 2022, unless otherwise indicated.

2

Ms. J.R. got into the driver's seat and Mr. D.V. got into the passenger's seat. T.S. and P.S. had entered the backseat from the driver's side, but Ms. J.R.'s car had fireworks in the backseat and clutter needed to be repositioned for Ms. T.S. and her three children to fit. Ms. T.S. told T.S. and P.S. to get out so they could rearrange themselves. Ms. T.S. was holding J.V. outside the vehicle as P.S. and T.S. were moving out of the car. As soon as T.S. got "from like halfway through the back driver's seat[,]" there was a "giant flashing light[,]" and she ducked. She could hear glass shattering everywhere.

Mr. Johnson's truck struck Ms. J.R.'s car as well as Ms. T.S., J.V., and P.S., who were all still outside the vehicle. Ms. J.R.'s car was totaled, and Ms. T.S., J.V., and P.S. died near instantly. T.S. saw J.V. was in front of Ms. J.R.'s car in front of the headlights with one leg amputated. P.S. was laying motionless on the ground next to the car. The force from the crash propelled Ms. T.S.'s body some distance down the road.

Mr. Johnson kept driving his truck after the accident and did not attend to anyone at the scene. Brant Bristow, an off-duty EMT, came upon the accident in his truck. Mr. Johnson passed Mr. Bristow before the accident, driving erratically, and, as the two vehicles approached "two amber lights flashing" on the side of the road, Mr. Bristow heard a loud sound and immediately stopped. He exited his truck and noticed P.S. was laying on the ground at the door of the car. Mr. Bristow then called 911, assessed the scene, checked for pulses on Ms. T.S. and J.V., and went back to check on P.S. After checking on P.S., he went back to where Ms. T.S. was laying. He looked off into the field and saw Mr. Johnson's truck sitting there with its headlights on, "going from reverse to drive, reverse to drive." Mr. Bristow "holler[ed]" and asked if he was okay. Mr. Johnson turned the truck's headlights off and lit a cigarette. Mr. Johnson never replied.

Officer Josh Roberts arrived on the scene and saw Mr. Johnson standing in the middle of the field. After calling out to Mr. Johnson to come towards the roadway multiple times with no response, Mr. Johnson started walking towards him. Mr. Johnson complained of back and shoulder pain and asked Officer Roberts if he could sit behind Officer Roberts's patrol car. Mr. Johnson told Officer Roberts he had two to three beers. Officer Roberts could smell alcohol "very strongly" coming from Mr. Johnson's person when he was talking to him and suspected him of driving under the influence. Corporal Todd Watson with the Missouri State Highway Patrol questioned Mr. Johnson, and Mr. Johnson admitted he was in the truck involved in the crash. Corporal Watson conducted field sobriety tests on Mr. Johnson to determine intoxication, arrested him for driving while intoxicated, and obtained a warrant for a blood sample from Mr. Johnson. The results of the blood sample test confirmed Mr. Johnson's blood alcohol content was still 0.138 percent six hours after hitting Ms. J.R.'s car, Ms. T.S., and her family.

The State charged Mr. Johnson with five felony counts: three for killing J.V., Ms. T.S., and P.S. by operating a motor vehicle while under the influence of alcohol and two for leaving the scene of an accident without stopping and providing contact information. One leaving the scene of an accident charge was connected to Mr. Johnson's accident that resulted in injury to J.V. and the other was based on damaging Ms. J.R.'s car. A jury found him guilty on all counts, and the trial court imposed a thirty-eight-year prison sentence, including two consecutive four-year terms for each leaving the scene of an accident charge.

*Standard of Review*

Mr. Johnson did not raise a double jeopardy issue at trial, nor did he preserve Points I and II for appellate review. This Court may nonetheless employ a plain error review of double jeopardy allegations under Rule 30.20.[2] "Rule 30.20 is the exclusive means by which an appellant can seek review of *any* unpreserved claim of error and said claim—no matter if it is statutory, constitutional, structural, or of some other origin—is evaluated by this Court's plain error framework without exception." **State v. Brandolese**, 601 S.W.3d 519, 530 (Mo. banc 2020). Plain error review is discretionary, and this Court will not review a claim under this standard unless it "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." **Id.** at 526 (quoting **State v. Clay**, 533 S.W.3d 710, 714 (Mo. banc 2017)). The burden of proof falls on the criminal defendant to show manifest injustice entitling the defendant to plain error review. **Id.** at 526. The alleged error must be evident, obvious, and clear. **State v. Minor**, 648 S.W.3d 721, 731 (Mo. banc 2022).

*Double Jeopardy and Legislative Intent*

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. amend. V. This protects criminal defendants against two different situations: (1) successive prosecutions for the same offense after acquittal or conviction; and (2) multiple punishments for the same offense. **Currier v. Virginia**, 138 S.Ct. 2144, 2150 (2018); **State v. Hardin**, 429 S.W.3d 417, 421 (Mo. banc 2014). The United States Constitution's Fourteenth Amendment applies these protections to state

---

[2] All rule references are to Missouri Court Rules (2023).

prosecutions. **Benton v. Maryland**, 395 U.S. 784, 794 (1969). Mr. Johnson argues his rights were violated because he received multiple punishments for one offense, leaving the scene of an accident.

Courts generally determine whether multiple charges constitute the same offense by considering whether each offense necessitates "proof of a fact which the other does not." **Blockburger v. United States**, 284 U.S. 299, 304 (1932); **State v. Liberty**, 370 S.W.3d 537, 546 (Mo. banc 2012). If no additional proof is required for one offense in one count versus another offense charged in a second count, then charging a criminal defendant with the same offense twice violates constitutional double jeopardy protections. **State v. Good**, 851 S.W.2d 1, 3 n.2 (Mo. App. S.D. 1992). "But when a defendant's conduct is continuous, involves more than one item or involves more than one victim, the test more appropriately is focused on the conduct the legislature intended to proscribe under the statute." **Liberty**, 370 S.W.3d at 546. If the legislature intended cumulative punishments to be possible, then there is no double jeopardy issue when a defendant is charged more than once for the same conduct. **State v. McTush**, 827 S.W.2d 184, 186 (Mo. banc 1992).

Missouri courts understand the Missouri General Assembly's intent by ascertaining what "unit of prosecution" is provided under an applicable criminal statute. **Horsey v. State**, 747 S.W.2d 748, 751 (Mo. App. S.D. 1988) (en banc); Section 556.041. Missouri courts also infer legislative intent by using the plain meaning of a statute's words. **State v. Knox**, 604 S.W.3d 316, 320 (Mo. banc 2020). We presume every word in the text has meaning and understand that there is no superfluous language. **State v. Johnson**, 524 S.W.3d 505, 511 (Mo. banc 2017). If a criminal statute so provides, a

6

single course of conduct or transaction may incur several units of prosecution such that a person can be charged with multiple crimes without violating double jeopardy. *State v. Thompson*, 147 S.W.3d 150, 160 (Mo. App. S.D. 2004). Conversely, the rule of lenity requires this Court to read criminal statutes in favor of the accused when they do not unambiguously allow multiple prosecutorial units. *Liberty*, 370 S.W.3d at 547. We find no such ambiguity here.

*Analysis*

A person commits the offense of leaving the scene of an accident when:

(1) Being the operator of a vehicle or vessel involved in **an** accident resulting in injury **or** death **or** damage to property of another person; and

(2) Having knowledge of such accident he or she leaves the place of the injury, damage or accident without stopping and giving [specified contact] information to the other party or to a law enforcement officer[.]

Section 577.060.1 (emphasis added). "An" is an indefinite article used before singular words with a vowel sound in place of the article "a." The legislature's use of "an" means one offense of leaving the scene is tied to a single accident. *State v. Harris*, 153 S.W.3d 4, 8 (Mo. App. W.D. 2005) ("For this reason, Missouri courts interpreting various criminal statutes using the word 'a' to specify the allowable unit of prosecution have uniformly held that there was no double jeopardy violation when the defendant was prosecuted and punished for multiple violations of the same statute."); *State v. Nichols*, 865 S.W.2d 435, 437 (Mo. App. E.D. 1993) ("The plain and ordinary meaning of the word 'a' is the singular 'one.'"). The several instances of the disjunctive "or" further indicate one violates section 577.060 each time he or she leaves the scene of an accident because each single accident can result in injury or death or property damage alone. *See*

7

*State v. Acevedo*, 339 S.W.3d 612, 617 (Mo. App. S.D. 2011) ("The disjunctive 'or' in its ordinary sense marks an alternative generally corresponding to the term 'either.'") (internal citation omitted). Reading all of these terms together, a criminal defendant violates section 577.060 each time he or she leaves the scene of a different accident resulting in death, injury, or property damage.

Applied to the events of July 4, 2017, a jury could have found Mr. Johnson committed the offense of leaving the scene of an accident when he struck J.V., which resulted in J.V.'s death, and then drove away, and again when he struck and totaled Ms. J.R.'s car and continued driving.[3] Though people may refer to the entire sequence of events as one "accident" in common parlance, each distinct impact was a separate accident under section 577.060.

This understanding, that a defendant commits a separate offense of leaving the scene of an accident for each qualifying accident he or she flees, conforms with existing case law. In *State v. Brown*, a driver was charged with two counts of leaving the scene of an accident after he hit two boys who were walking single file alongside a street. 547 S.W.2d 217, 218-19 (Mo. App. St.L.D. 1977). The defendant argued, just as Mr. Johnson does here, that there was only one single accident constituting a distinct offense and that he could not be charged with two counts of leaving the scene of an accident connected to harming both children. *Id.* at 219. The court disagreed: "One accident occurred when [the defendant's] automobile struck [one boy's] newscart, driving the cart

---

[3] The record on appeal does not indicate why the State charged Mr. Johnson with only two counts of leaving the scene of an accident and did not attempt to prosecute him for leaving the scene of the accidents resulting in the deaths of Ms. T.S. and P.S.

into [him] and thereby injuring him. A second accident occurred when [the defendant's] vehicle struck and injured [the other boy]. Each impact constituted an accident." *Id.* at 220. Missouri courts have since cited to ***Brown*** without questioning its holding. *See, e.g.*, ***State v. Childs***, 684 S.W.2d 508, 511 (Mo. App. E.D. 1984) (finding no double jeopardy violation from a conviction for three counts of forcible rape for acts perpetrated over five hours); *see also* ***State v. Campbell***, 551 S.W.2d 940, 942 (Mo. App. St.L.D. 1977) (finding no double jeopardy violation from a conviction for two counts of assault with intent to do great bodily harm without malice). We find that the logic of ***Brown*** applies here. Two different accidents occurred: the first, when Mr. Johnson struck J.V. and the second, when Mr. Johnson struck Ms. J.R.'s car. He then left the scene of both accidents, thereby creating the foundation for two counts under section 577.060.

Mr. Johnson argues his case is more similar to the facts in ***State v. Baker*** and urges us to apply the same analysis here. 850 S.W.2d 944 (Mo. App. E.D. 1993). In ***Baker***, the defendant was convicted of four counts of possessing weapons in a prison. *Id.* at 946. The charging statute forbade the bringing of "any" weapon into a correctional facility. Section 217.360, RSMo 1986 (repealed, effective January 1, 2017). The defendant argued his counsel was ineffective for failing to raise a double jeopardy defense and that the motion court erred in denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. ***Baker***, 850 S.W.2d at 947. Because the word "any" in the criminal statute imparted ambiguity, the court determined it was ambiguous as to the allowable unit of prosecution. *Id.* at 948. Therefore, double jeopardy would have been a valid defense and the defendant was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. *Id.*

9

Section 577.060, however, does not use the term "any" when describing a qualifying accident. It is then not ambiguous as to the allowable units of prosecution and allows for multiple prosecutions for each single accident. If section 577.060 read "leaving the scene of **any** accident," we might agree *Baker* supports Mr. Johnson's argument. Instead, section 577.060 refers to "an accident" resulting in a singular "injury or death or damage to property." A crime accordingly occurs each time a driver leaves "an" accident, not "any" accident. Striking a mother, two children, and a vehicle on the side of the road may have been one tragedy, but it was also multiple "accidents" under section 577.060.

In Point II, Mr. Johnson alternatively argues that charging him with two counts of leaving the scene of an accident violated double jeopardy protections under section 556.041 because leaving the scene of an accident is a continuing course of conduct offense. This statute states, "When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense." Section 556.041. However, a "person may not . . . be convicted of more than one offense if . . . [t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted[.]" Section 556.041(4). Mr. Johnson admits he "has been unable to find any Missouri case directly on point" but offers that leaving the scene of an accident "may be most akin" to a continuing course of conduct offense. His reliance on analogy under plain error review does not convince us there is any evident, obvious, and clear error.

Section 556.041 only prohibits the conviction for multiple offenses for the same conduct when the legislature has separately defined an offense as a continuing course of

10

conduct offense or when a criminal statute does not specify the allowable unit of prosecution. *State v. French*, 79 S.W.3d 896, 899 (Mo. banc 2002) ("Only where the charging statute is silent as to the unit of prosecution must recourse be made to Missouri's general cumulative punishment statute, sec. 556.041, RSMo."); *Thompson*, 147 S.W.3d at 160 (saying the same). The statute does not apply here because the legislature has not defined the crime of leaving the scene of an accident as a continuing course of conduct offense, and, as previously discussed, section 577.060 is not ambiguous and includes multiple units of prosecution for each qualifying accident that a defendant leaves.

Mr. Johnson also relies on *Good*, 851 S.W.2d at 2. A jury found the criminal defendant in *Good* guilty of two counts of resisting arrest: one for threatening an arresting officer with a knife and another count for drawing a second knife to accost a second officer who arrived to assist the first. *Id.* The defendant argued her convictions violated double jeopardy and section 556.041 because both counts were based on an uninterrupted, continuing course of conduct. *Id.* at 2-3. We agreed because "the gist of the offense is the resistance by the defendant and not the number of officers involved." *Id.* at 6. However, *Good* is distinguishable because it addresses a different criminal statute. Whereas section 577.060 provides a person "commits the offense of leaving the scene of **an accident**" each time the person leaves the scene of an accident "resulting in injury **or** death **or** damage to property[,]" section 575.150 criminalizes the single act of resisting "the arrest" regardless of the number of officers present. Section 577.060 (emphasis added); Section 575.150, RSMo 2000. As case law had already determined when we decided *Good*, "[t]he gravamen of the offense [of resisting arrest] is resisting an

11

arrest, not flight from a law enforcement officer." ***Good***, 851 S.W.2d at 5-6 (quoting

***State v. Long***, 802 S.W.2d 573, 575 (Mo. App. S.D. 1991)). Section 575.150 focuses on

a defendant's actions and not "upon how many officers were attempting to arrest the

defendant[.]" ***Id.*** at 6. Missouri precedent on the offense of leaving the scene of an

accident, on the other hand, shows it permits multiple units of prosecution. ***Brown***, 547

S.W.2d at 220.

Mr. Johnson has supplied nothing further to make us question the holding in

***Brown***. Given Mr. Johnson's admission that he has found no Missouri case law

"directly on point" to support his argument that leaving the scene of an accident is a

continuing course of conduct offense, we find no plain error in his convictions.

Points I and II are denied.

### Point III:  The Trial Court did not Abuse its Discretion by Overruling Mr. Johnson's Request for a Mistrial due to Juror Misconduct when the Alleged Misconduct at Issue Amounted to an Exchange of Pleasantries.

*Facts Pertinent to Point III*

Following a break during the trial, Mr. Johnson informed the trial court that two

of his nieces saw Sergeant Pulley from the Missouri Highway Patrol, one of the State's

witnesses who had just testified in the trial, speaking with a juror in the courthouse

parking lot. The trial court called Sergeant Pulley and the juror into the courtroom to

testify about their encounter. Sergeant Pulley said he had not realized he was speaking to

a juror and explained that their conversation was not about Mr. Johnson's trial. The juror

had called out to Sergeant Pulley because she thought she recognized him. By

coincidence, the juror knew Sergeant Pulley's twin brother as a referee for youth

volleyball. Both Sergeant Pulley and the juror testified that their conversation did not

12

stray from the topic of their mutual relationship with Sergeant Pulley's brother, and they only spoke for mere moments.

Mr. Johnson moved for a mistrial. The trial court saw the interaction as small talk and denied Mr. Johnson's motion.

*Standard of Review*

A trial court has great discretion to conduct trial proceedings, and this Court will not disturb its rulings at trial absent a showing of an abuse of discretion. ***State v. Downum***, 598 S.W.3d 189, 199 (Mo. App. S.D. 2020). That discretion extends to the trial court's rulings on accusations of juror misconduct. ***State v. Smith***, 944 S.W.2d 901, 921 (Mo. banc 1997) ("A trial court's ruling as to the existence of juror misconduct will not be disturbed absent a finding of abuse of discretion on review."); ***State v. Dunn***, 21 S.W.3d 77, 83 (Mo. App. S.D. 2000) (saying the same). A mistrial is a drastic remedy and should only be used where the resulting prejudice cannot be remedied. ***State v. Schneider***, 736 S.W.2d 392, 400 (Mo. banc 1987). A criminal defendant seeking a new trial on the basis of juror misconduct must establish that said misconduct actually occurred. ***Dunn***, 21 S.W.3d at 84. Only then must the State affirmatively demonstrate that jurors were not improperly influenced or otherwise engaged in misconduct that deprived the defendant of his right to a fair and impartial jury. ***Id.*** Allegations of juror misconduct alone are not self-proving. ***Smith***, 944 S.W.2d at 921.

*Analysis*

Mr. Johnson argues, based on ***State v. Friend***, the trial court abused its discretion in overruling his motion for a mistrial because even "innocent visiting" between a witness and juror should be avoided. 607 S.W.2d 902, 904 (Mo. App. S.D. 1980). This

Court held in *Friend* that a trial court did not abuse its discretion in refusing to grant a mistrial after it learned that a prosecuting witness spoke to a juror during a recess about an incident that occurred during the break of the trial where a deputy sheriff knocked a cigarette out of the mouth of another juror. *Id.* The trial court did not grant the mistrial because the juror and witness did not discuss the merits of the defendant's case or trial proceedings. *Id.*; *see also State v. Eaton*, 504 S.W.2d 12, 21-22 (Mo. 1973) (holding a trial court did not abuse its discretion in failing to grant a mistrial where a juror spoke to a complaining witness but there was "no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted"). The same reasoning applies in Mr. Johnson's case.

In this case, there was no evidence that the topic of the conversation between Sergeant Pulley and the juror was related at all to the trial. "When matters are 'casual, brief and totally unrelated to anything associated with the trial,' there is no prejudice to the defendant." *Hanna v. State*, 398 S.W.3d 125, 132 (Mo. App. S.D. 2013) (quoting *State v. Baum*, 714 S.W.2d 804, 811 (Mo. App. S.D. 1986)). Here, the juror thought she recognized the sergeant, and they talked briefly about his brother. Mr. Johnson presented nothing additional contradicting the juror's and Sergeant Pulley's affirmations, and Mr. Johnson suffered no prejudice. The trial court independently reviewed the accusation of juror misconduct and did not believe mistrial was warranted. The trial court did not abuse its discretion in overruling Mr. Johnson's motion for mistrial given that the juror and sergeant's conversations amounted to mere pleasantries. *Id.* at 133 ("An exchange of 'pleasantries' does not automatically result in 'grievous prejudice' to a defendant requiring trial court grant of the drastic remedy of a mistrial.").

14

Point III is denied.

## Conclusion

The trial court's judgment convicting Mr. Johnson of his charges is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS